THE MAYOR AND CITY COUNCIL OF BALTIMORE *vs.*
CHRISTOPHER C. O'DONNELL, by his next friend
JOHN W. O'DONNELL.

*Liability of a Municipal Corporation for Injuries caused by
the Negligence of its Contractor's agents.*

The appellant by ordinance directed, that West Street in the City of
Baltimore should be repaired, re-paved and re-curbed. M. con-
tracted to do the work, and employed C. to superintend it. The
street being impassable, C. caused a rope to be stretched across it,
to prevent travel thereon, and directed a lamp to be suspended
from the rope, as a warning. The person whom he left in charge
did suspend such lamp, but it was immediately broken and extin-
guished by stones thrown by boys. The person in charge took the
lamp to his home in the vicinity to repair or replace it, but did
not replace it that night. During his absence, the appellee in
attempting to pass up the street, driving his hack, came in contact
with the rope of which he had no warning, and received injuries.
No officer of the appellant had notice of the rope being stretched
across the street, and C. had no orders on the subject from any one.
In an action by the appellee to recover damages from the appellant,
it was HELD:

That the appellant was liable.

APPEAL from the Court of Common Pleas.

The case is stated in the opinion of the Court.

*Exception.*—At the trial the plaintiff offered two prayers;
the first is set out in the opinion, the second is as follows:

That in estimating the damages to be given, the jury
may consider the health and mental and physical condi-
tion of the plaintiff before the injury complained of, as
compared with his present condition of mind and body in

consequence of the injury, and whether the injury is in its nature permanent, and how far it is calculated to disable the plaintiff from engaging in those employments and pursuits for which, in the absence of the injury, he would have been qualified; and also the physical and mental suffering to which he has been subjected by reason of the said injury, and to allow such damages as in the opinion of the jury will be a fair and just compensation for the injury which he has sustained.

The defendant offered six prayers, of which it is necessary to set out only the first, which is as follows:

That if the jury shall find from the evidence, that at the time of the happening of the injury to the plaintiff, complained of in the declaration, West street, between Charles and Light streets, was being repaved and recurbed under and in pursuance of an ordinance or ordinances of the Mayor and City Council of Baltimore, which required that said work should be done by contract, and that such contract should be awarded to the lowest responsible bidder, and that the contract for re-paving and re-curbing West street as aforesaid, was in accordance with the provisions of said ordinances awarded to Joseph C. Manning, and that Frederick C. Crowley was employed by said contractor to superintend said work, and did superintend the same, and that said Crowley was under the exclusive control and in the independent employment of said contractor, and not of this defendant, and that during the execution of said work under said contract, the rope mentioned in the declaration, whereby the injury to said plaintiff is alleged to have been occasioned, was extended across West street, at the place and time and in the manner given in evidence by said Crowley, or by his direction, then that the plaintiff is not entitled to recover in this action against this defendant, although the jury may believe that said accident and injury to the plaintiff were caused by the placing of said rope at the place and in the manner given in evidence.

The Court, (Brown, J.,) granted the plaintiff's first and second, and defendant's second, third, fourth, fifth and sixth prayers, and rejected the defendant's first prayer; the defendant excepted, and the verdict and judgment for $1000, being for the plaintiff, the defendant appealed.

*James L. McLane,* for the appellant.

It has long been settled in England, that defendants not personally interfering or giving directions respecting the progress of the work, but contracting with a third person to do it, are not responsible for a wrongful act or negligence in the performance of the contract, if the act agreed to be done is legal. *Reedie vs. Cubitt,* 4 *Exch.,* 243; *Knight vs. Fox,* 5 *Exch.,* 721; *Overton vs. Freeman,* 11 *C. B.,* 867; *Peachy vs. Rowland,* 16 *Eng. L. & E,* 422; *Gray vs. Pullen and Hubble,* 32 *Law Journal, N. S.,* 169; 1874 *ch.* 218; *City Code of* 1879, *p.* 1010.

Whatever may have been the apparent conflict of opinion growing out of the early case of *Bush vs. Steinman,* the rule as stated by Chief Justice Cockburn in *Gray vs. Pullen,* is certainly the law of this State. The rule applies with full force to municipal corporations. *Deford vs. State, use of Keyser,* 30 *Md.,* 179; *Blake vs. Ferris,* 5 *N. Y.,* (1 *Seld.,*) 48; *Pack vs. Mayor,* 4 *Seld.,* 222; *Kelly vs. Mayor,* 11 *N. Y.,* (1 *Kernan,*) 432; *Barry vs. St. Louis,* 17 *Missouri,* 121; *Painter vs. Mayor,* 46 *Penna. St.,* 213.

*John K. Cowen,* for the appellee.

In several cases similar to this, the City of Baltimore has been held liable for injuries resulting from failure on its part to warn the public of the existence of dangerous defects and obstructions, or failure to carefully guard such defects and obstructions. *M. & C. C. of Balto. vs. Marriott,* 9 *Md.,* 160; *M. & C. C. of Balto. vs. Pennington & Harlan,* 15 *Md.,* 12; *M. & C. C. of Balto. vs. Holmes,* 39 *Md.,* 243.

So, likewise, County Commissioners have been held liable. *Co. Comrs. of A. A. Co. vs. Duckett,* 20 *Md.,* 468; *Co. Comrs. of Balto. Co. vs. Baker,* 40 *Md.,* 8.

An examination of these and other authorities shows, that but two conditions need concur to establish such a duty and liability in the absence of a positive statute on the subject:

1st. The place in question, whether bridge, road or street, must be one over which the corporation has the right to exercise control in one way or another, and which it has the right to repair, and—

2nd. The city (corporation) must have the authority to levy taxes or impose assessments for the purposes of carrying out the powers and privileges conferred. 2 *Dillon Mun. Corp.,* 916–917; *Blake vs. St. Louis,* 40 *Mo.,* 569–570; *Brooklin vs. Brooklin R. R. Co.,* 47 *N. Y.,* 482.

That as the City of Baltimore has the right of control over the streets, lanes and alleys within its limits, and the right to keep them in repair, and that as it has the authority to levy taxes for the purpose of meeting the expenses incident to repair, all of which will fully appear from the statutes, relating to the city, and the ordinances contained in the City Code of 1879, it must be held liable for any disregard of its duty in this particular.

The appellant, however, seeks to evade the responsibility attaching to it by shifting such responsibility from its shoulders to those of the contractor, Manning, and for this purpose offered its first prayer, which, in substance, instructs the jury to find for the defendant, if they believe that the work in progress was under the city ordinances of 1874, in the hands of a contractor whose superintendent and agents stretched across the street the rope causing the injury. The appellant, therefore, substantially claims that even assuming it to be its duty to keep the streets free from obstructions, and in a safe and passable condition, yet, if it becomes important or necessary to repair one of

8                      v. 53.

them, the work required *may* be performed by a contrac-
tor—in spite of the fact that the city alone under the law
has the right to do the work—and if undertaken by him,
and whilst in progress, through his glaring negligence a
citizen is injured, the city itself avoids all liability, because
it has committed to another the discharge of a duty under
the terms of a contract as loose as that given in the evi-
dence, with no provisions looking to the protection during
the execution of the work of those entitled and accustomed
to the free and unobstructed use of the highway, utterly
silent about the barriers and precautions, and containing
no clauses of indemnity for the city against justifiable and
legal claims presented for injuries resulting from acts of
negligence in the contractor. Can it be said that in such
a case those injured may not seek redress from the city,
but shall pursue a forlorn remedy against those who in
nine cases out of ten are insolvent contractors, whose dan-
gerous excavations the plaintiff could not anticipate, and
whom he could not compel to use proper signals of danger,
whilst the city, the author of the work by whose command
the excavation was made, who had the right to insist upon
the erection of proper barriers, stands free from liability?
To sanction the doctrine thus sought to be established,
would be equivalent to saying that a city may determine
to have a dangerous excavation made, and that, too, in a
frequented thoroughfare; may select its own contractor
for the excavation of the work, who may be grossly negli-
gent in its performance; and yet, in the event of an in-
jury to a citizen, the latter cannot recover because the city
has a right to shield itself from liability by interposing
the contract which the city itself has made for the very
thing which creates the danger. A municipal corporation
like Baltimore, upon which the injunction is laid to keep
its streets and alleys in safe and passable condition, which
has the power of passing ordinances of any character what-
ever necessary to keep them in such safe and passable con-

dition ; that has at its command the financial resources requisite to meet any expense incurred in putting the streets in safe and passable condition, cannot, with impunity, either itself, or through the means of independent contractors, tear up the cobble stones, dig dangerous holes, and leave them unguarded at night, and without a single precaution to warn people of impending danger. Numerous decisions in this country confirm this statement of the law. *Southern Law Rev., Vol.* 5, *No.* 1, *p.* 118 ; *Prentiss vs. Boston,* 112 *Mass.,* 43; *Note to Painter vs. Pittsburg,* 3 *Am. Law Reg. (N. S.,)* 360; *Centreville vs. Woods,* 57 *Ind.,* 192 ; *Hammond vs. Mukwa,* 40 *Wis.,* 35–41 ; *Wendell vs. Mayor, &c., of Troy,* 39 *Barb.,* 335 ; *Williard vs. Town of Newburg,* 22 *Vt.,* 458 ; *Batty vs. Duxbury,* 24 *Vt.,* 155 ; *Inhabitants of Veazie vs. R. R. Co.,* 49 *Me.,* 119 ; *Welcome vs. Inhabitants of Leeds,* 51 *Me.,* 313 ; *Norristown vs. Moyer,* 67 *Pa. St.,* 367 ; *Phila. vs. Weller,* 4 *Brews.,* 24 ; *Currier vs. Lowell,* 16 *Pick.,* 170 ; *Bacon vs. Boston,* 3 *Cush.,* 174 ; *Merrill vs. Inhabitants. of Wilbraham,* 11 *Gray,* 154 ; *Pollard vs. Inhabitants of Woburn,* 104 *Mass.,* 84 ; *Hawks vs. Northampton,* 116 *Mass.,* 420 ; *Burk vs. Boston,* 122 *Mass.,* 223 ; *Blake vs. St. Louis,* 40 *Mo.,* 569 ; *Elliott vs. Concord,* 27 *N H.,* 204 ; *Detroit vs. Corey,* 9 *Mich.,* 169, 184 ; *Wilson vs. City of Watertown,* 10 *N. Y. Sup. Ct.,* 579 ; *Lowrey vs. Delphi,* 53 *Ind.,* 255 ; *Springfield vs. LeClaire,* 49 *Ill.,* 476–8 ; *Scammon vs. Chicago,* 25 *Ill.,* 424 ; *City of St. Paul vs. Seitz,* 3 *Minn.,* 297 ; *Chicago vs. Robbins,* 2 *Black.,* 425 ; *McCafferty vs. S. and D. and P. M. Railroad Co.,* 61 *New York,* 186, 187.

IRVING, J., delivered the opinion of the Court.

This appeal presents the single question, whether the Mayor and City Council of Baltimore are liable, in damages, to the appellee, for injuries received by him, while West street, one of the streets of the corporation, was undergoing repair, by reason of the neglect of the con-

tractor, who was doing the work, to give sufficient warning of the work being in progress. The facts are few. West street, which is admitted to be one of the streets of the City of Baltimore, was, by ordinance, directed to be repaired, re-paved and re-curbed. Joseph C. Manning, a contractor, entered into contract with the Mayor and City Council to do the work. He employed Frederic Crowley to superintend the work. The street being impassable, Crowley caused a rope to be stretched across the street to prevent travel theron. He directed a person to suspend a lamp from the rope as a warning. The person whom he left in charge did suspend such lamp, but it was immediately broken and extinguished by stones thrown by some boys. The person left in charge took the lamp to his home, in the vicinity, to repair or replace it and did not replace it that night. During his absence the appellee, in attempting to pass up that strcet, driving his hack, came in contact with the rope, of which he had no warning, and received the injuries for which he sued the appellant. No officer of the city had notice of the rope being stretched across the street, and Crowley had no orders from the city authorities or any other person on the subject.

The appellant contends, that inasmuch as the work was being done by an independent contractor, pursuing an employment wholly independent of the city, who was free to exercise his own judgment as to the mode of conducting the work, and the assistants he was to employ, that the rule of *respondeat superior* does not apply, and that the contractor alone is responsible, if any one is. In reply the appellee admits, that ordinarily as a condition precedent to holding *superior* amenable, the relation of master and servant must be shown to exist, and that in the case of a contractor employing others to do the work these sub-employees cannot be strictly regarded as servants of the city; but he insists that another rule applies which fixes the responsibility of the city in this case. That rule he

insists is this, that where the person, for whom the work to be done is under a pre-existing obligation to have the work done in a particular way, or to have certain precautions against accident observed, he cannot be discharged by creating the relation between himself and another of employé and contractor.   The learned Judge who decided the case below regarded the appellant as under such pre-existing obligation, and so instructed the jury, and it is that ruling we are asked to review.

This is a question upon which there is some conflict of authority, and is therefore not entirely free from difficulty.

The cases of *Barry vs. St. Louis,* 17 *Missouri,* 121, and *Painter vs. Mayor,* 46 *Pa. St.,* 213, cited by the appellant strongly sustain their position, but the weight of authority is the other way, and upon full examination we think that sound reason and proper public policy do not sustain the decisions in Missouri and Pennsylvania on the subject.   The case of *Storrs vs. The City of Utica,* (17 *N. Y.,* 109,) is precisely analogous to this case and lays down the law, as we think, in accordance with sound principle. In that case there was a sewer to be built, and the city let out the contract of building it.   In making the sewer an excavation was made in the street which was left open in the night-time, without guards, lights or warnings of the danger it created.   Plaintiff drove into it and was injured.   Defence was made that the contractor was liable and not the city; but this defence was not sustained by the Court and plaintiff recovered against the city.   On appeal the Supreme Court affirmed Judge PRATT's ruling, and on further appeal to the Court of Appeals, that Court affirmed the decision.   Judge COMSTOCK, in delivering the opinion of the Court, puts the decision on the express ground that the obligation rested on the municipal corporation to keep the streets in a safe condition for travel. He says "although the work may be let out by contract, the corporation still remains charged with the care and

control of the street, in which the improvement is carried on.   The performance of the work necessarily renders the street unsafe for night travel.   This is a result which does not all depend on the care or negligence of the laborers employed by the contractor.   The danger arises from the very nature of the improvement, and if it can be averted only by special precautions such as placing guards or lighting the street, the corporation, which has authorized the improvement is plainly bound to take those precautions. The contractor may very properly be bound by his agreement not only to construct the sewer, but also to do such other acts as are necessary to protect travel.   But a municipal corporation cannot, I think, in this way either avoid indictment on behalf of the public, or its liability to individuals."   The same doctrine is maintained by the Supreme Court of the United States in *City of Chicago vs. Robbins*, 2 *Black*, 418, and in *Robbins vs. Chicago City*, 4 *Wallace*, 657.   The weight of authority is now so much in favor of this view, that Judge DILLON in his excellent work on *Municipal Corporations, sections* 791, 792, 793, states this to be the better doctrine.   In *Josiah Eyler vs. The County Commissioners of Allegany*, 49 *Md.*, 257, the Court had occasion to examine the many cases on this subject, and recognized the authorities to which we have adverted as properly defining the law.   In that case the Chesapeake and Ohio Canal was shown to be under obligation to keep up a certain bridge over a public road which the canal crossed.   Its obligation was undeniable, but this Court held that the County Commissioners were not thereby exempted from liability for injury resulting from the nonrepair of the bridge, which formed a part of the public highway, because the primary obligation rested on them to see to it that the public highways were kept in a safe and passable condition.   The opinion, in that case, so fully collates and considers the authorities bearing on this subject, it is wholly unnecessary to extend this opinion by

further citations. It is proper to say that *Deford's Case,* 30 *Md.,* 179, which has been cited by appellants' counsel to sustain his view, does not conflict with the principles herein announced. One of the very grounds of removal in that case was that an instruction granted excluded from the jury the consideration of the question whether or not the work being done by Deford was not in itself a nuisance. Besides the case in no way involved this question of primary obligation belonging to a municipal corporation. In the case under consideration the city might have provided by the contract for the exercise of due precaution by the contractor against a accident, so as to make the contractor answerable to the city, in the event of injuries sustained, but could not by the contract relieve itself from liability. The contract actually provides for the contractor's keeping the street in repair for two whole years after the work should be completed. If the view of the appellant, that the exclusive control of the street by the contract passed into the hands of the contractor be true, then the city's liability would be gone so long as the contractor's authority existed under the contract. That cannot be.

The Court properly instructed the jury, in the first prayer of the plaintiff, " that it was the duty of the defendant to take proper precaution, by proper guards, signals, lights or other warnings, to warn persons of the impassable condition of the street, so as to prevent injuries to persons passing along said street, and if the jury further find that the defendant, and those employed by it in repairing and re-curbing said street, did not use ordinary care in providing such precautions, and that the plaintiff in consequence of such neglect to provide such precautions, was thrown from his hack, while driving with ordinary care along said street, then the plaintiff is entitled to recover." No defect in the plaintiff's second prayer respecting the measure of damages has been pointed out, and the Court sees none. The defendant's first prayer was properly

rejected, because of the reasons already given to justify the plaintiff's first prayer. We find no error and the judgment will be affirmed.

> *Judgment affirmed*
> *with costs.*

(Decided 9th February, 1880.)