Mr. Justice Cox
delivered the opinion of the Court:
This is an action brought to recover damages for injuries alleged to have been done by the defendants to a building belonging to the plaintiff, immediately north of and adjoining the new store erected by Saks & Company on the corner of Pennsylvania -avenue and Seventh street.
It is known that the lot was occupied formerly by another building some five stories in height, well known in judicial history as having been erected by Miss Dermott, which passed afterwards into the ownership of Mr. Jesse Wilson. Mr. Fowler bought his lot in 1850, adjoining this building, and made use of the north wall of it as a party-wall, resting his rafters in that wall. In 1884 the defendants, Saks & Company, entered into possession under an agreement with Mr. Wilson for a twenty-years lease, which agreement was performed on Mr. Wilson’s part by the execution of such a lease on the 16th of October, the same year. As soon as they entered into possession, they entered into a contract with Kenderdine and Paret to pull down the existing building and erect a new one, which is the present structure. In the course of that work it became necessary to remove the north wall which had been used as a party-wall. In doing so, the contractors did undertake to shore up and protect the building of Mr. Fowler, the plaintiff, but, as he alleges, did it very imperfectly, and the consequence was that his building was weakened, cracked and settled, and was permanently injured.
At the trial of the case, only one instruction was given by the court at the instance of the plaintiff. That related merely to the measure of damages. There were thirteen instructions asked by the defendants. The trial resulted in a verdict for the plaintiff for $2,784; there was a motion for a *575 new trial before the trial justice, on exceptions, which was overruled, and an appeal was taken to this court.
One of the complaints in the argument, as to rulings of the court, may be resolved into three propositions:
First. That the declaration in this case relies entirely upon the alleged neglect of the defendants in failing to properly protect the building of the plaintiff in the course of their operation of building ; and
Secondly. That the court allowed the plaintiff to spring upon the defendants, in the trial, one of the building regulations of the District, which was not made the foundation of the claim in the declaration at all. It reads as follows :
“The inspector of buildings shall, upon the application of any building owner or his’ authorized agent, examine any or all existing party or division walls; if deemed by said inspector to be defective, out of repair or otherwise unfit for the purpose of new buildings about to be erected, such party or division wall shall be made good, repaired, or taken down by the building owner, as the decision may be, the cost and expense of which repair or removal, together with the expense of the new wall or walls to be erected in lieu thereof shall be borne and paid exclusively by him; and he shall also make good all damage occasioned thereby to the adjoining owner or his premises.”
And it is further claimed that the trial judge rested his rulings upon that building regulation; whereas, it is said, that was not the foundation of the claim in the declaration.
And the third proposition is, that so much of this regulation as imposes upon the building owner the duty of making good all damage caused by taking down a party wall is not strictly a building regulation but is entirely ultra vires and void.
On examining the declaration, we find that it is not confined to the allegation of negligence on the part of the defendants as to the manner in which they prosecuted their -work, but it alleges that “ it was the duty of the said defendants to use such care, skill, and workmanship in- the *576 destruction of said building on said lot * * * as to protect the plaintiff from all loss or injury to said premises by reason of the destruction of said building and party-wall by said defendants.” “And, further, that it was the duty of said defendants to care for plaintiff’s said building during the time occupied in the prosecution of said work, and to properly and skillfully rebuild and shore said party-wall, and to make good all injuries occasioned to plaintiff’s said building and to repair all damage occasioned to plaintiff’s said building by the said works of defendants or by the failure of defendants to do all acts necessary by them to be done.”
“Yet,” and here is the breach alleged, “ the said defendants, by their said agents and servants, so negligently, unskillfully, wrongfully, and improperly tore down said building and said party wall so adjoining and forming part of plaintiff’s said building, as aforesaid, without properly shoring up, propping up, or duly securing plaintiff’s said building from damage by reason of their tearing down and destroying the said building and party-wall as aforesaid, so that for want of. such proper shoring up, propping up, or duly securing thereof the said house of the plaintiff became and was by and through the tearing down and destroying of the said building and party wall adjoining the plaintiff’s said premises, greatly weakened, damaged, and injured, and, as a consequence thereof, in part fell down, by reason of which negligent, unskillful, improper, and wrongful tearing down ’ of said building and party-wall, and of the defendant’s failure properly and skillfully to guard and protect the plaintiff’s said building, and by reason of said defendant’s failure to care for plaintiff’s said building during the time occupied in the prosecution of said work by said defendants, and of their failure to make good all injuries occasioned to said building and to repair all damages occasioned to said building by the said works of said defendants, and to properly and skillfully rebuild and restore said party-wall; and by reason of the failure of defendants to do all acts necessary by them to be done the plaintiff was and is greatly damaged,” &c. '
*577 So that we think the declaration is not founded upon merely alleged neglect of the defendants, but upon their duty to malea good all damages occasioned by the prosecution of their operations in the particulars mentioned.
When we come to see the instructions of the court, we find that, at the instance of the plaintiff', only one instruction was given, which is as follows:
“ If the jury shall find for the plaintiff, the measure of damages is such amount as the jury may find from the evidence was expended by plaintiff for the necessary preservation of his premises during the work of taking down and putting up the party-wall, together with such sum as the jury may find would be necessary to restore the plaintiff’s premises to the same condition they were in before the taking down of said party-wall, and in addition thereto such amount as the plaintiff would necessarily lose in rent during said restoration, if they shall find that plaintiff would be subjected to such loss of rent.”
The court refused the thirteenth instruction asked by the defendants but granted it with a modification. That instruction was:
“ If the jury shall be satisfied from the evidence that the old wall between the plaintiff’s building and the premises occupied by the defendants was skillfully and carefully taken down, and that the now party-wall was constructed with reasonable care and skill, and that the property of the plaintiff was reasonably cared for and protected during the building thereof and then restored with reasonable care and skill and with proper material, the defendants are entitled to your verdict. The defendants possessed the lawful right to take down the old building and to build a new one in its place, provided such work was done with reasonable care and skill and with proper material.”
The court refused to grant that, except with the qualification: “Provided, that the building of the plaintiff, so far as affected by the taking down and erection of said party-wall, *578 was restored to the like good condition in which it was at the time of taking down said party-wall.”
The court gave no instruction as to what hypothetical-state of facts would justify a verdict for the plaintiff, but it may be inferred from these two instructions; that is, the instruction as to the measure of damages and the qualification I have just mentioned, that the court did deem it the duty of the defendants to make good the damages occasioned by the destruction of that party-wall. The court does not in terms derive this duty either from the building regulations or from the common law, but if the duty is prescribed by either — validly prescribed by the building regulation or one that is enjoined by the common law — that would be sufficient to vindicate the rulings of the court. That brings us to the subject of party-walls in general, and the rights and obligations connected with them.
What we understand now by a party-wall had no existence at common law, except by convention between coterminous proprietors. A mail had no right to enter upon and occupy a part of his neighbor’s land for his own convenience or for any purpose whatever without his consent. The privilege or easement, as we call it, giving to a builder the right of erecting a division wall between himself and his neighbor, partly upon his neighbor’s land is therefore purely the creature of legislation.
Under authority of the deeds executed by the original proprietors of land within the District to the trustees, .Beall and Gantt, which are very well known in this District, and of the Act of Maryland of 1791, making the cession of the District to the United States, General Washington promulgated certain building regulations. One of these is in the following terms:
October 17, 1791.
“That the person or persons appointed by Commissioners to superintend the buildings may enter on the land of any person to set out the foundation and regulate the walls to *579 be built between party and party as to the breadth and thickness thereof, which foundation shall be laid equally upon the lands of the persons between whom such party-walls are to be built, and shall be of the breadth and thickness determined by such person proper, and the first builder shall be re-imbursed one moiety of the charge of such party-wall or so much thereof as the next builder shall have occasion to make use of before such next builder shall any use or break into the wall. The charge or value thereof to be set by the person or persons so appointed by the Commissioners.”
This building regulation, so authorized, is the foundation and the only source of the right claimed by any one here to locate his party-wall one-half on his neighbor’s land. If the regulation stopped there, and we conceive a case in which the party-wall is thus established, the question would naturally arise, has either party a right, afterwards to disturb that party-wall, pull it dowm, build up a larger one or make an addition to the existing wall, underpin it or raise it higher for his own purposes. On general principles, it would seem not, for the simple reason that each party then has a vested right in that wall, whether you call them tenants in common or tenants in severalty as to the parts occupying their respective lots of ground. If tenants in common, each has the right to have his interest in common undisturbed; if they are tenants in severalty, each has the right to one-half of the wall in severalty, and to the support of the other half. On general principles, it would seem that neither one has the right to disturb the w7all. This seems to be the current of the authorities, with this simple qualification, that if the wall becomes dilapidated, so that it actually needs to be reconstructed, then either party may, for his own protection, remove the wall; but, writh that exception, the rule, I think, seems to be that, at common law, independently of any legislation, neither party would have a right to pull down the .wall once established. The cases on this subject will *580 be found collated in 2 Washburn on Easements, pages 604 to 621. There arc cases, however, which hold that either party may underpin a wall or raise it higher for his own purposes, as long as he can do it without prejudice to the adjoining building. The cases on that subject will be found referred to in Cooley on Torts, on pages 373 and 374, and also collated in the case of Brooks against Curtis, in 50 N. Y., 639. But in those cases it does not become a mere question of care or diligence. There is an absolute duty imposed upon the proprietor who makes an alteration in the wall for the purposes mentioned, to see that his neighbor’s property is not injured, and whether he exercises care and skill or not, he is absolutely responsible for any injury that results from the change.
We may assume then, that, in the absence of legislative sanction, one of two coterminous owners has no right to pull down a party-wall; if he does so, he commits a trespass and he is liable in damages, and the natural measure of damages would be what it would cost to restore the property of his neighbor to the condition in which it was before he entered upon that undertaking. That is his common law liability'', and we may say, his duty.
In that condition 'of the law, a new building regulation is enacted. By Act of Congress of June 14, 1878, the Commissioners were authorized to establish such new building-regulations as they may deem proper. Thereupon a new building regulation was added to the existing ones, ydiich has been already read, but I will read it again :
“The inspector of buildings shall, upon the' application of any building owner or his authorized agent, examine any or all existing party or division walls, and if deemed by said inspector to be defective, out of repair, or otherwise unfit for the purpose of new buildings about to be erected, such party or division wall shall be made good” — that is the important part in the present case — “ repaired, or taken down by the building owner, as the decision may be, the *581 cost and expense of which repair or removal, together with the expense of the new wall or walls to be erected in lieu thereof”' — that is, whether defective, out of repair, or otherwise unfit for the purpose of erecting a new building thereon — “shall be borne and paid exclusively by him, and he shall also make good all damage occasioned thereby to the adjoining owner or his premises,”
Now, it is said that this latter part is not a building regulation, but is an ordinance by these Commissioners that the building owner should make good all damages occasioned by his act. If there had been a pre-existing right to take down the wall and then the Commissioners had afterwards attempted to establish an independent regulation, to the effect that the jiarty exercising that right should have to pay damages for it, perhaps it might be contended, with at least plausibility, if not success, that such a i*cgulation would not strictly be a building regulation, but would belong to the legislative authority; but, in the present form, I think the building regulation must be read as prescribing the condition upon which this privilege or easement of taking-down and reconstructing a party-wall is conferred. It should be remembered that there is no right at all to remove a party-wall, except such as is derived from this building regulation. Now, it does seem that the Commissioners, in ordaining (if I may use that expression) such a building regulation, giving that privilege which is an unusual one — a departure from the common law — had a right to prescribe such conditions as were just and reasonable. We cannot doubt that this would be a just and reasonable condition. It is t'o be read, therefore, as giving the right to take down and remove and reconstruct this party-wall on the condition that the expense of it shall be paid exclusively by the building owner, and that “ he shall also make good all damage occasioned thereby to the adjoining owner or his premises.” The defendants invoke that regulation as a warrant for their proceeding. They cannot take *582 the benefit of that building regulation and repudiate the conditions on which it is given. The Supreme Court, in a recent case just decided, Keller m Ashford, used language appropriate to that question. That case, it will be remembered, was one in which one Thompson conveyed certain real estate to Dr. Ashford, subject to certain incumbrances which the grantee assumed. After the property was sold, falling-short of realizing- the amount of the incumbrances, a bill was filed to compel him to pay the balance. The court said he could not take the benefit of the deeds to him without also assuming the burdens. So, any one who invokes the authority of this building regulation to justify him entering his neighbor’s premises and pulling down his wall, must take it subject to the condition annexed to that permission, which, in itself, is a perfectly reasonable condition. As a matter of fact also, the defendants in this case did accept the privilege with the condition, and did assume the duty which the building regulation purports to impose upon him. It appears from the testimony of Mr. Entwistle that when he gave the permit to pull down the north wall it -was given with the notice that they would be required to make good all damages occasioned thereby to the adjoining-owner. And, thereupon, the defendants, in making their contract with Kenderdine and Paret, put in this provision:
“As the walls of the present building are to be taken down, the contractor is- to shore up all joists, etc., in the adjoining buildings, board up and make iveather-tight the several stories of the buildings and space under roofs, and as soon as practicable after the new walls are. up, plaster and restore all the work injured by taking down the wcdls and put it in as good condition as it was before the walls were removed.”
To save themselves harmless, they make the contractor enter into that engagement, and the contractors did enter upon the lot of the plaintiff and undertake to shore up his building and restore it to its former condition, but the complaint is that he did not shore it up sufficiently and, in *583 consequence, it got out of plumb and was generally injured. So that the reasonable condition prescribed by this building regulation was recognized, assumed and accepted by the defendants themselves when they undertook to tear down the wall and when they made this contract with Kenderdine and Paret. It is not for them to say now that the condition was void when it is annexed to a privilege which they undertook to exercise.
The building regulation may reasonably receive still another reading. At common law, a party had no right to enter upon and take down this wall, and if he did so, he was liable to make good the damage. If this regulation had said nothing about damages, the question might have been made whether it intended to confer the privilege of taking down -the wall without regard to the consequences to the neighbor; but, as it is expressed, it simply gives a privilege which did not exist-at common law, but reserves the common law liability for the consequences. We are satisfied, therefore, that upon all the grounds — both on the ground that this building regulation prescribed a reasonable condition, and also because the building regulation may be entirely ignored and the defendants would still be under an obligation to make good the damages occasioned by this entry upon their neighbor’s land, whether the justice at the trial based liis opinion upon the common law duty or the duty prescribed by the building regulation— lie was right.
The next important question in the case, is that relating .to the subject of independent contractors. Tt is claimed that this work was not done by the defendants, Saks & Co., but done by Kenderdine and Paret, who were not their agents in the matter, but independent contractors. The distinction is very well understood between an agent and an independent contractor. I employ a man to do work for me— to build my house, for example — under my express directions as to all the details. He becomes my agent and I *584 become responsible for all injuries resulting to other people from his neglect; but if I am compelled to have work done which requires technical skill, and employ a man versed in that species of work, and trust the matter entirely to him, and contract rvith him simply for the result, and have no control wdiatever over the means and details of producing it, that man becomes an independent contractor, and I am not, as a general rule, responsible for injuries to other people through his negligence. That would, be illustrated in this case by supposing somebody passing along the street where this building w'as in course of construction to be injured by falling bricks or timber through the negligence of the contractor. The owners of the building would not have been responsible in that case. There is no doubt at all that this was a case of independent contractor. These defendants had no skill in building. They never undertook to exercise any, but trusted it entirely to their contractors, Kenderdino and Paret.
But the rule itself has certain very proper and reasonable exceptions. These are expressed, perhaps-as well as anywhere else, in Cooley on Torts, pages 547 and 548.
“In general” it is said, "it is entirely competent for one having any particular work to be performed to enter into agreement with an independent contractor to take charge of and do the whole work, employing his own assistants and being responsible only for the completion of the work as agreed. The exceptions to this statement are the following : He must not contract for that the necessary or probable effect of which would be to injure others, and he cannot, by any contract, relieve himself of duties re,sting upon him as an owner of real estate, not to do or suffer to be done upon it that which will constitute a nuisance, and therefore an invasion of the rights of others. Observing these rules, he may make contracts, under which the contractor, for the time being, becomes an independent principal, whose servants are exclusively his, and not of those of the em *585 ployer he contracts with; and the 'contractor is in no such sense the servant of his employer as to give to others rights against the employer growing out of the contractor’s negligence. In one case the following rules have been laid down: 1. If a contractor faithfully performs his contract, and a third person is injured by the contractor in the course of its due performance or by its result, the employer is liable, for he causes the precise act to be done which occasions the injury, but for the negligence of the contractor not done under the contract, but in violation of it, the employer is in general not liable. 2. If I employ a contractor to do a job of wrork for me, which in the progress of its execution obviously exposes others to unusual jierils, I ought, I think, to be responsible on the same principle as in the last case, for I cause acts to be done which naturally expose others to, inj ury.”
This question generally arises where a man is doing or causing work to be done on his own premises. But the present is a case wdiere he has actually entered upon the premises of another man. It is hardly necessary to say that that kinchof work is, necessarily and per se, a nuisance. In the first place, it causes inevitable temporary disarrangement and inconvenience; it imperils the safety of'the adjoining building and very often results, as in the present case, in its permanent injury, and in a case of that kind it w;ould seem to be extremely unjust that the building owner should get rid of bis responsibility by contracting with somebody else to prosecute this work, especially as his contractor, although a reputable and skillful builder, may be pecuniarily irresponsible.
Then, another exception to the rule would he wdiere a party is under an antecedent obligation to do a thing, or to do a thing in a particular wa}r. In that case ho cannot get rid of his responsibility by deputing it to somebody else. That principle is illustrated in the case of the Mayor of the City of Baltimore vs. O’Donnel, found in 53 Md. Rep., 110. *586 There a contractor had been 'employed to do certain work on one of the public streets. An excavation had been made but it was imperfectly protected and a person fell into it and was injured. The court of appeals say:
“The appellant contends that inasmuch as the work was being done by an independent.contractor pursuing an employment wholly independent of the city, who was free to exercise his own judgment as-to the mode of conducting the work and the assistants he was to employ, the rule of respondeat superior does not apply, and that the contractor alone is responsible, if any one is. In reply, the appellee admits that, ordinarily, as a condition precedent to holding the superior amenable,- the relation of master and servant must be shown to exist, and that in the case of a contractor employing others to do the work, these sub-employees cannot be strictly regarded as servants of the city, but he insists that another rule applies which fixes the responsibility of the city in this case. That rule he insists is this: That where the person for whom the work to bé done is under a pre-existing obligation to have the work done in a particular way or to have certain precautions against accident observed, he cannot be discharged by creating the relation between himself and another of employer and contractor. The learned judge who decided the case below regarded the appellant as under such pre-existing obligation, and so instructed the jury, and it is that ruling we are asked to review.”
And the court affirmed the ruling. It seems to me that case lays down a very clear principle. In this case, it was the duty of the defendants, either under the building regulations or the common law,,to make good all damages occasioned by this building operation, and they could not get rid of that duty by employing a contractor to do the work.
This kind of case is distinguishable from those in which a man occasions an injury to a neighbor by work on his own premises, as by excavation. It seems to be pretty well *587 settled that a man has a right to support his own land by the adjoining land, and if his neighbor digs down his land so as to deprive him of that support, so that his land caves in, he has a right of action, although his neighbor may exercise all the care and skill he can. He is absolutely bound to make good the damages. But a man, unless in certain instances, as where he has a clear right by prescription or otherwise, has no right to the support for buildings that he loads his land with in that way. The law then requires that a man who excavates his own land, at the risk of his neighbor’s buildings, must exercise proper care and skill; but, on the other hand, the authorities also hold that, even in that case, this duty of exercising care and skill cannot be deputed to a contractor, so as to relieve the owner of responsibility. Certain cases were cited in the argument to this effect, as the case of Bower vs. Peak, 1 Q. B. Div., 321, where it wras held that where one ordered work, even on his own premises, which would naturally threaten injurious consequences to his neighbor; that is, pulling down a house and the excavation of land, he wras bound to see to the doing of all that was necessary to prevent it and could not relieve himself from that responsibility by employing a contractor.
In Tarry vs. Ashton, in the same volume, it was held, that one keeping a lamp suspended in front of bis house on a public highway was bound to keep it in a safe condition, and was not protected from the consequences of neglect by employing an independent contractor to attend to it.
In Hughes vs. Percival, in 8 App. Cas., 443, where the defendant took down his own house, in doing which his contractor cut into the party-wall between him and his neighbor — not even attempting to remove the party-wall— and thereby caused the builder’s house to fall and drag down the plaintiff’s house, it was held that the law cast the duty on the defendant to see that skill and care were exercised in the operation, and he could not avoid the consequences by delegating the performance to a third person. *588 If that rule operates where a man is building, on his own land, with how much more force ought it to obtain where he is actually invading his neighbor’s land and temporarily destroying part of his property ?
We, therefore, are satisfied that the general rule exonerating a party who employs an independent contractor, has no application at all to this case.
On looking at the instructions asked on the part of the defendants, it will be found that all of them, except the general instruction prayed for at the close of the evidence, “ that the plaintiff is not entitled to recover,” presented this same question in different forms. I will read a single one of the instructions to show the character of all. The third instruction:
“If the jury find from the evidence that the construction of the building mentioned in the declaration was done under the contract and specifications annexed thereto, given in evidence, and that the defendants neither furnished any of the material, machinery and labor employed in doing the work, nor exercised any control over it, either as to the mode or manner of doing it, and that the damage complained of was the result of negligence on the part of the contractors, Kenderdine and Paret, and the employees,'between whom and the defendants, the court instructs the jury, the relation of master and servant did not exist, then the plaintiff is not entitled to recover in this action, and your verdict should be for the defendants.” That is a sample of the instructions. They are all simply variations of that one form. There are one or two minor questions presented b}1' instructions which were not pressed at the argument and which do not seem to call for any remark. On the whole, we think the ruling of the court at the trial term ought to be affirmed.
Mr. Justice James
said :
While concurring entirely in the conclusion reached, I prefer to base the liability of the defendants distinctly upon *589 the ground of the common law. I do not think I am ready to say that the makers of the building regulations can add to or vary the liability the party incurs at common law in doing an act. I think, also, that the defendants’ liability may be based upon the ground that they assumed the liability by contract, for when they were informed of . the terms of the building regulations, they substantially said, “ Very well, we accept them, and will remove these ■walls on those terms, and will make good the damages, if there are any.” I think the conclusion of the court may be rested on either of these two grounds, but am not prepared to say that in making a building regulation the Commissioners can impose in invitum the liability a man incurs, and say what he shall pay for injuring the property of another. It is only for the purpose of avoiding any contribution to that idea that I have said this much.