BERNARD THILLMAN *vs.* THE MAYOR & CITY
COUNCIL OF BALTIMORE *et al.*

*Instruction Not Referring to the Pleadings—Liability of Municipal Corporation for Negligent Paving of Street Done by Independent Contractor—Action Against Both—Evidence.*

The correctness of a prayer which does not refer to the pleadings must be determined entirely by a consideration of the evidence.

Although a municipality employs an independent contractor to grade and pave a street, it is liable for an injury caused to the property of an abutting owner by reason of the contractor's negligent or improper manner of doing the work, since the municipality is bound to pave its streets without inflicting unnecessary injury on third parties, and cannot be relieved from this duty by committing the work to an independent contractor, especially in a case where the municipality retains the right to supervise and inspect the work as it progresses.

An independent contracting company employed by a municipal corporation to grade, pave and curb a street, changed the condition of an alley opening into the street, deflected the gutter stones, and improperly paved the alley, as a result of which the water flowing in the alley, instead of passing off into a sewer, as formerly, got under the pavement, and found its way into the cellar of plaintiff's house, which abutted on the alley, and flooded the same on many occasions. The contract between the municipality and the company provided that the work should be done under the inspection of the City Engineer and he had some control over it. *Held,* that the evidence is legally sufficient to show that the change made in the alley by the contracting company was made in connection with the performance of its contract to pave the street, and also shows that this work was defectively done, and that its negligent construction was the cause of the injury to the plaintiff.

*Held,* further, that the municipality, as well as the contracting company, is liable for such injury, but that in an action against both only such damages can be recovered as they are jointly liable for.

*Decided June 30th, 1909.*

Appeal from the Court of Common Pleas of Baltimore City (ELLIOTT, J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS, WORTHINGTON and HENRY, JJ.

*Hyland P. Stewart* and *J. Marsh Matthews,* for the appellant.

*W. H. DeC. Wright* (with whom was *Edgar Allan Poe, City Solicitor* on the brief), for the Mayor and City Council of Baltimore, appellee.

*Howard Bryant* (with whom was *James B. Guyton* on the brief), for the Filbert Paving Co., appellee.

BOYD, C. J., delivered the opinion of the Court.

The appellant sued the appellees and Isaac S. Filbert for injuries alleged to have been sustained to his properties on the southwest corner of Broadway and Hoffman streets in the City of Baltimore, numbered 1328-1336 North Broadway. The case has some peculiar features. Although the Filbert Paving and Construction Company was made a party by amendment, the declaration alleges that the Mayor and City Council of Baltimore, being the owner of the beds and alleys in the city and particularly of the beds of Broadway and Hoffman streets and the "ten foot" alley in the rear of the plaintiff's premises, undertook with the assistance of the defendant, Isaac S. Filbert, "to change the grade of Hoffman street at said point and to repave the street, the said work

being done in such a careless and negligent manner as to seriously damage the said properties of the plaintiff, and the water which had hitherto for years been accustomed to pass out of said alley in the rear of said properties and out Hoffman street was diverted from its usual course and dammed up in such a careless and negligent manner by said defendants as to cause the same to overflow and flood the properties above mentioned of the plaintiff, whereby the same were greatly damaged," etc. It will be observed that the Filbert Paving and Construction Company is not alleged to have been connected with the work, and during the trial the case against Isaac S. Filbert was dismissed. There is no reference to the company in the *narr.* excepting in the beginning where it is mentioned as one of the defendants.

Then in the evidence, as will be seen later, the cause of the injury was claimed to be the alleged negligent filling and repaving of the alley near Hoffman street. At the conclusion of the plaintiff's testimony the Mayor and City Council of Baltimore and the Filbert Paving and Construction Company, each offered a prayer that there was no evidence legally sufficient to entitle the plaintiff to recover against it and the verdict must therefore be for it. Both of the prayers were granted, a verdict was rendered for the defendants and from the judgment entered on that verdict, this appeal was taken. The prayers do not refer to the pleadings and hence their correctness must be determined entirely by a consideration of the evidence. 2 *Poe,* sec. 302; *Con. Ry. Co. v. Pierce,* 89 Md. 495; *West Va. Central Ry. Co. v. Fuller,* 96 Md. 652, and many other cases. So although nothing was alleged against the Filbert Company and the evidence does not sustain the allegations in the narr. against the city, we are not permitted to consider the pleadings in passing on the prayers but must assume that they were granted with reference to the evidence alone.

It is not denied that there was evidence of injury to the plaintiff's property, and hence we need only determine

whether there was legally sufficient evidence that such in-
jury was caused by the defendants, or either of them, in a
way which made them liable.  It is contended on the part of
the city that it is relieved from liability because the work
was done by an independent contractor.  The general princi-
ples applicable where work is to be done by a contractor,
upon his own responsibility, who is not subject to the control
of the employer as to the manner in which it is to be per-
formed, have been well established in this State since they
were so clearly announced by JUDGE ALVEY in *DeFord* v.
*State,* 30 Md. 179.  In that case the Court quoted at length
from the opinions of POLLOCK, C. B., and BARON WILDE in
*Hole* v. *S. & S. Ry. Co.,* 6 Hurls. & Norm. 488.  The former
said: "I suggested, in the course of the argument, that where
a man employs a contractor to build a house, who builds it
so as to darken another person's window, the remedy is not
against the builder, but the owner of the house.  It may be
that the same principle applies to cases where a man is em-
ployed by another to do an act which it is the duty of the
latter to do.  In such cases it is the duty of the owner of the
soil to inquire what is in the course of being done—to know
what is the plan—to see that materials are good, and to take
care that no mischief ensues."  BARON WILDE thus stated
the principle: " The distinction appears to me to be that
when work is being done under a contract, if an accident
happens, and an injury is caused by negligence in a matter
entirely collateral to the contract, the liability turns on the
question whether the relation of master and servant exists.
But when the thing contracted to be done causes the mischief,
and the injury can only be said to arise from the authority
of the employer, because the thing contracted to be done is
imperfectly performed, there the employer must be taken to
have authorized the act, and is responsible for it."

That distinction has been consistently recognized in our
decisions since *DeFord's Case* was determined and may be
illustrated by citing some of them.  In *Moores' Case,* 80 Md.
348, the company was relieved because the negligence which

caused the accident was wholly collateral to the contract. An employee of the contractor was guilty of negligence in not stopping an engine and in blowing the whistle as Mrs. Moores was driving along the turnpike. The engine was being used by the contractor for hauling ballast to be placed on the tracks of the railway company. But in that case it was said: "Even if the relation of principal and agent, or master and servant, do not, strictly speaking, exist, yet the person for whom the work is done may still be liable if the injury is such as might have been anticipated by him, as a probable consequence of the work let out to the contractor, or if it be of such character as must result in creating a nuisance, or if he owes a duty to third persons or the public in the execution of the work." So in *Symons* v. *Road Directors,* 105 Md. 254, the injury was for blasting, done some distance from the public road by the servants of an independent contractor, with which the agents of the defendants were in no wise connected.

In *O'Donnell's Case,* 53 Md. 110, the city was held liable for an accident caused by the plaintiff driving at night into a rope which the agent of the contractor had stretched across a street but upon which there was at the time no lighted lantern. The rule contended for by Mr. Cowen, counsel for plaintiff, was approved as follows: "Where the person for whom the work to be done is under a pre-existing obligation to have the work done in a particular way, or to have certain precautions against accident observed, he cannot be discharged by creating the relation between himself and another of employer and contractor." And in *Moores' Case, supra,* it will be seen from the above quotation that the contractor is not relieved "if he owes a duty to third persons or the public in the execution of the work." In *Bonaparte* v. *Wiseman,* 89 Md. 12, one who contracted with an independent contractor to make an excavation on his own lot was held liable for injury thereby caused to the house of an adjoining owner when such injury might reasonably have been anticipated as the probable consequence of the excavation, and no

notice had been given to the adjoining lot owner. In *P. B. & W. R. Co.*, v. *Mitchell*, 107 Md. 600, it was held that: "When work is being done by an independent contractor, the employer is not liable for an injury caused by the contractor's negligence in a collateral matter, but he is liable if the injury is caused by the thing contracted to be done, or if it be such as might have been anticipated as a probable consequence of the work let out to the contractor, and no precaution is taken to prevent the injury. The duty to refrain from interfering with the right of the public to the safe and unimpeded use of highways is one of which an employer cannot divest himself by committing the work to a contractor." In *Bernheimer Bros.* v. *Bager*, 108 Md. 551, we quoted with approval from 16 *Am. & Eng. Ency. of L.*, 197, that "a person or corporation on whom positive duties are imposed by law cannot avoid liability for injuries resulting from failure to perform such duties, by employing a contractor for the purpose; nor in such a case is the fact that the injuries resulted from the contractor's negligence a defence." That article goes on to say: "The most important application of this principle, that one who is under a positive duty cannot relieve himself therefrom by delegating it to an independent contractor, occurs in the case of a municipal corporation, which, by the decided weight of authority, is liable for injuries caused by defects in its streets or highways, though these are the direct result of the negligence of a contractor employed by it, since it is under the positive duty of keeping its streets in a safe condition; and the municipality cannot protect itself in this regard by stipulations requiring the contractor to take proper precautions. But a city is not liable for injuries caused by conditions resulting from the negligence of a contractor, if these conditions did not involve any neglect of municipal duty."

It cannot be denied that it was the duty of the city to have this work so done that it would not cause unnecessary injury to the public, or to the owners of adjoining properties, and it could not relieve itself of all liability by having the work

done by an independent contractor. There was evidence tending to show that the cause of the trouble was that at the end of the alley, next to Hoffman street, there was a pond of water resulting from it being dammed up after the street was finished, and a drain which had conducted the water from the alley to a sewer on Broadway had been taken up; that dirt was then hauled to the alley and "dumped into this slushy part until it was filled up." The plaintiff told the superintendent "that isn't going to be a job," but they paved the alley, which was then slushy ground, according to the plaintiff's testimony. There was a fill on the east side of the alley of three feet and one the west side of three feet seven inches—making a slope of seven inches towards Broadway. In paving, by reason of the slope, they deflected the gutter stones from the center of the alley to the curbstone at the corner of the building line of Hoffman street and the Northeastern end of the alley. The theory of the plaintiff was that by reason of paving the alley in the condition in which it was, owing to the dirt being dumped in the water and causing slush, the stones sank and let the water from the alley go down under the stones and run under the sidewalk on Hoffman street to Broadway, and then, by reason of the solid foundation under the pavements on Hoffman street and on Broadway, the water was backed up until, the foundation of his house being weaker, it found its way into his cellar. There is ample evidence to sustain that theory, and it also shows that there was a crevice between the gutter stones about half an inch wide and eight to twelve inches long, through which some of the water, passing down the alley, went and eventually got into the plaintiff's cellar.

The plaintiff's testimony also tended to show that the conditions complained of existed from time to time from October 10th, 1903, until sometime in 1905, when he finally ascertained what the cause was and corrected the trouble. He testified that the floodings of his cellar occurred on over twenty different occasions he had made note of—including from October 10th, 1903, to February 13th, 1905; that be-

fore the improvements were made he had never had any trouble with water in his cellar and that since he had some concreting done in the alley, in October, 1905, no water had gone in "and it is as dry as a bone, as it used to be before." He complained to the city authorities at least as soon as the early part of 1904 and about the 23rd of February of that year the City sent a man to fix the alley. He caulked the gutter stones which stopped the water for a little while, but it did not last. As early as March 8th, 1904, there was some correspondence between the plaintiff and the City Engineer.

We have thus referred at some length to the evidence in reference to the conditions existing to show that for a long time after the work was done by the contractor the plaintiff suffered injury by reason of its faulty construction. Even if the city could have escaped liability from injuries sustained by the plaintiff while the work was still in the hands of the contractor, it could not have done so for those sustained after it had taken control of the street and alley. *Sipe* v. *P. R. R. Co.,* 71 At. Rep. 847; 26 *Cyc.,* 1566, where many cases are cited.

But the evidence also shows that the Assistant City Engineer "saw the work being done every day while it was in progress and mostly under his inspection." The contract provided that "All material furnished and work done, not in accordance with these specifications, shall be removed within twenty-four (24) hours after written notice from the city engineer, by and at the expense of the contractor; or in case of failure to do so, it shall be removed by the city and the cost charged to the contractor and deducted from the amount due him." There is a provision that "All soft and spongy material below the sub-grade shall be removed and filled with clean, sharp sand or gravel or other material satisfactory to the city engineer, and thoroughly rammed and rolled;" and another that: "Wherever the city engineer is mentioned in these specifications it is understood to be the city engineer in person, assistant city engineer, or the assistant engineer in

charge of the work." There are a number of other provisions
giving the city engineer more or less control over the work.
Under such circumstances we can have no doubt of the liabil-
ity of the city for defects in the work, causing injury to the
plaintiff. It is not only its duty to have such work done, but
to have it properly done, so that others will not suffer from it
being improperly performed. Our own cases recognize the
rule that an employer is not relieved by having a contractor,
when he retains control of the work himself. In *Bonaparte*
v. *Wiseman, supra,* "a party who employs an independent
contractor to do certain work, *without reserving any control*
over it is not liable,*" etc. In *Symons Case* the fact was noted
that the road engineer of Allegany County had no control
over the work. See also *Stork* v. *Philadelphia,* 199 Pa. St.
462; 16 *Am. & Eng. Ency. of Law,* 187; 26 *Cyc.,* 1565. In
this contract there was more than a mere reservation by the
city to supervise the work, for the purpose of determining
whether it was being done in conformity to the contract. It
rather indicates that the city officers realized that they owed
a duty to the public, and to those who might be specially in-
terested, to see that the work was properly done. We are,
then, of the opinion that the city could not be relieved from
this action by reason of the contract made with the Filbert
Paving and Construction Company.

The remaining question to be determined is whether there
was any legally sufficient evidence to entitle the plaintiff to
recover. The Assistant City Engineer testified that the pav-
ing, grading and curbing of Hoffman street, from the west
side of Broadway to the east side of Bond street, was done
by the City of Baltimore, "by and through the Filbert Pav-
ing and Construction Company," and the evidence tended
to show that what was done in the alley was done by that
company in connection with the work on Hoffman street. It
was suggested at the argument that this was a private alley,
but, however that may be, the work was undertaken by the
city in connection with the grading and paving of Hoffman
street, and there was unquestionably some evidence tending

to show that the work was defectively done and that by reason of the negligent construction the plaintiff suffered loss. The testimony does not show that it was merely an incidental or consequential injury such as may result from the change of a grade of a street, done under legislative authority, and for which the municipality is not liable. "In such cases, if the work be done with care so as to avoid unnecessary injury to adjacent property, *and there be no invasion of such property,* its owners must suffer the injury resulting from the work thus done to promote the public welfare." *Guest* v. *Church Hill,* 90 Md. 693. But in this case, there was evidence that the work was not done with care, and that the injury to the plaintiff's property was the direct result of such want of care. If the work had been properly done, the change in the grade and paving of Hoffman street would not have caused the injury complained of, for the alley was filled sufficiently high where it joined Hoffman street to let the water run from it. The gutter stones were deflected to the northeast because the grade of Hoffman street was lower on that side, but there was sufficient fall to let the surface water empty into Hoffman street. The difficulty was that by reason of the faulty construction, in filling and paving the alley, the water did not run off but got under the pavement and finally into the plaintiff's cellar. Of course we are assuming the testimony offered by the plaintiff to be correct, as we must in considering these prayers, and with that assumption there was undoubtedly evidence of negligence. The city authorities apparently discovered where the water came from and corrected the defect temporarily, but it was only temporary.

It is well settled that, although the powers granted a municipality by its charter to open, grade and pave streets, and to construct such gutters and sewers as in its judgment the public convenience may require, are discretionary, "any particular plan that may be adopted must be a reasonable one, and the manner of its execution thence becomes, with respect to the right of the citizen, a mere ministerial duty; and for

any negligence or unskilfulness in the execution or construc-
tion of the work, whereby injury is inflicted upon pirvate
right, the municipality will be held responsible." *Hitchins*
v. *Frostburg,* 68 Md. 100.

So within deeming it necessary to discuss other grounds
of recovery, as claimed by the appellant, we are of the opin-
ion that there was sufficient evidence in the case to require
the Court to submit it to the jury. Of course a further ques-
tion may arise as to what damages, if any, can be recovered
against the defendants jointly as only such as they are jointly
liable for can be recovered in an action against the two de-
fendants. 1 *Poe,* sec. 492. But we are of the opinion the
prayers ought not to have been granted and hence the judg-
ment must be reversed.

> *Judgment reversed and new trial awarded,*
> *the appellees to pay the costs above and*
> *below.*