# THE MAYOR AND CITY COUNCIL OF BALTIMORE, A Body Corporate, and THE AMERICAN PAVING AND CONTRACTING COMPANY, A Body Corporate,

## *vs.*

## JOSEPHINE LEONARD.

*Municipal corporations: duties; not to be delegated. Streets: repaving; negligence of contractor; proof; city's liability. Evidence of personal injuries: exhibition to jury; order of evidence.*

In an action against a municipal corporation and a paving contractor, for injuries received from a fall caused by a pin or stake, driven in a city roadway to mark curb lines, where the contractor was regrading the road for the city, positive evidence that the stake had been actually driven by the contractor or his agents is not essential, if the instrument is such as properly would be used in course of prosecution of such work, it raises a fair presumption, and is evidence to go to the jury.          p. 625

The Mayor and City Council of Baltimore are not freed from responsibility for injuries resulting from the negligent way in which street repairs were made, by the mere fact that a contractor was employed to do the work.          p. 625

One under a positive duty can not relieve himself of it by delegating it to an independent contractor.          p. 625

The order in which proof should be given is within the discretion of the trial Court.          p. 626

It is not error to have allowed the plaintiff, suing for damages for a broken arm, to move the arm before the jury, that they might hear the peculiar noise it made, when her attending physician, afterward, testified that when massaging or moving her shoulder and arm he would get the clink of bones rubbing upon each other.          p. 626

*Decided January 10th, 1917.*

Appeal from the Court of Common Pleas of Baltimore City. (STUMP, J.)

The facts are stated in the opinion of the Court.

The cause was submitted to BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*S. S. Field, City Solicitor,* and *Robt. F. Leach, Jr., Assistant City Solicitor,* for the Mayor and City Council, and *Richard B. Tippett* and *J. Royal Tippett,* for the American Paving & Contracting Co., appellants.

*Harry B. Wolf* and *Israel B. Brodie,* for the appellee.

CONSTABLE, J., delivered the opinion of the Court.

The present appeal is from a judgment recovered by the plaintiff below for injuries alleged to have been occasioned by the negligence of the appellants.

The record contains but two exceptions—one to the ruling of the Court upon a matter of evidence, and the other to its action upon the prayers. No criticism is made of the action upon the prayers except the refusal to grant separate instructions for each defendant withdrawing the case from the consideration of the jury.

It will therefore be necessary to review the testimony offered on behalf of the appellee, and to determine therefrom whether there was any evidence tending to prove the negligence of the appellants, or evidence from which negligence may be legally inferred; assuming, however, the truth of that evidence as offered, for we are not concerned, in disposing of prayers of this character, with the weight or value of the evidence, as that is a matter strictly within the province of the jury. And if there is any evidence competent, pertinent, or from which inferences of fact may be fairly deducible to support the plaintiff's case, the case should not be withdrawn from the consideration of the jury, as this Court has so often said.

The appellant, The Mayor and City Council of Baltimore, entered into a contract with the other appellant, The American Paving and Contracting Co., by which the latter was to grade, curb and pave the Old York Road from Gorsuch Avenue to the northern city limits, and some of the intersecting streets. Pursuant to the contract, the Paving Company was on October 12, 1914, the date of the injury here sued for, and for about three months prior thereto, engaged in carrying out the contract. The Old York Road was a dirt highway, with a dirt or cinder path along its side for pedestrians. Dumbarton Avenue was one of the streets entering York Road from the east, but did not intersect it. The appellee testified that she was coming down, after dark, on the path on the west side of the Old York Road, and that, in order to get to her home on Dumbarton Avenue, it was necessary for her to cross the Old York Road. This she attempted to do at a point about opposite Dumbarton Avenue. She testified that boards had been laid from the sidewalk to the road, so as to enable pedestrians to cross over the gutter or ditch; that as she was thus crossing her dress was caught by something and she was thrown violently against a pile of lumber and thus injured; that after she fell she found the object that threw her to be an iron stake driven in the ground a few inches from the edge of the boardwalk, and projecting above the level of the pavement about six inches. "It was an iron stake where the rope was tied from one side to the other. That was down at the curb line and was not up against anything; there was a lot of lumber and bricks piled around it." She knew her dress caught on the stake because when she got up her dress was still around the iron; it was pulled right off her back.

The Consolidated Gas Company was laying mains on the east side of the road and maintained a watchman. He was produced as a witness for the appellee, and testified that after the appellee had fallen he went over to her assistance; that he saw the iron stake by which the appellee had been thrown; it was an iron pin and was up about six inches, and

that he drove it down level with the ground with a brick. "The stake was used for the purpose of drawing a line— that is, a chalk line or a line for the curb, or anything like that. It was used in grading and paving streets. The stake was about five inches above the sidewalk; there were no lights or lanterns at the point of the accident." He further testified that the boards used for the crossing were form boards that were used for putting up concrete curbing, and that there were piles of vitrified brick all around the street.

Sherman L. Wood testified that he is employed at a grocery store about opposite the place where the accident occurred, and was familiar with the location and the work that was being done there. That the Paving Company was getting ready to put in the curbing and that the street had been dug out to the curb; that forms for curbing had been placed on the west side of the road; that the Paving Company had put a board there as a platform for people to walk on; that the boards were the kind that are used for the formation of curbing; that about six inches from this platform an iron pin of about one-half inch in diameter had been driven. "It wasn't holding anything and it looked as if it was driven there for a line of some kind to get a direct line of the curbing."

The appellant, The American Paving and Contracting Co., does not contend that there would not be sufficient legal evidence to go to the jury to establish its liability, if there had been testimony offered to show that it was responsible for the placing of the stake by which the injury was occasioned. This is not to be wondered at when we consider that this stake was in a thoroughfare not closed for travel, and was certainly an obstruction that was liable at any time to cause an injury.

It does contend, however, that there has been no evidence offered tending to show that it was responsible for the placing of the stake. We cannot agree with this contention, for, from the recital of the testimony as above, it is apparent that the fact is fairly deducible from the evidence that the·

stake was placed as it was in the prosecution of the appellant's work. There is the positive testimony that the road at this point had been dug out up to the curb line and the company was preparing to lay the curb, and had already laid the forms and had the material for the paving already on the ground. There is testimony that this stake was the kind of stake used in this character of work for getting lines for curbing and grading. It is not to be supposed, in a case of this character, that it would be probable that a party could secure positive evidence that the stake had been actually driven by the contractor or his agents, and it would be too hard a rule of law to so require. But when it is taken into consideration that the work for which such an instrument would be used is in course of prosecution, it seems to us to be a fair inference, in the light of all the facts, that the Paving Company was responsible for the placing of this obstruction. We think, therefore, there was no error by the learned Court below in refusing to withdraw the case from the jury at the instance of the Paving Company.

That the Court below was correct in refusing the application of the Mayor and City Council to withdraw the case from the consideration of the jury cannot be questioned, since it has been repeatedly held by this Court that "a person or corporation on whom positive duties are imposed by law can not avoid liability for injuries resulting from failure to perform such duties by employing a contractor for the purpose; nor in such a case is the fact that the injuries resulted from the contractor's negligence a defense." The quotation is from 16 *American & English Encyclopedia of Law,* 197, quoted with approval in *Bernheimer Bros.* v. *Bager,* 108 Md. 551. In *Thillman* v. *Baltimore City,* 111 Md. 131, this Court quoted with approval from the same article: "The most important application of this principle, that one who is under a positive duty cannot relieve himself therefrom by delegating it to an independent contractor, occurs in the case of a municipal corporation, which, by the decided weight of

authority, is liable for injuries caused by defects in its streets or highways, though these are the direct result of the negligence of a contractor employed by it, since it is under the positive duty of keeping its streets in a safe condition; and the municipality can not protect itself in this regard by stipulations requiring the contractor to take the proper precautions. But a city is not liable for injuries caused by conditions resulting from the negligence of a contractor, if these conditions did not involve any neglect of municipal duty." *Baltimore City* v. *O'Donnell,* 53 Md. 110; *McCarthy* v. *Clark,* 115 Md. 454.

The evidence tends to show that the city did nothing to avoid unnecessary injury to the public while the road was being reconstructed. The exception from the ruling on the testimony arose in this way: After the appellee had testified as to the injury to her arm, it was proposed to have her exhibit the arm to the jury, and have her move it up and down, so that the jury could hear a peculiar sound produced by her moving it. The Court permitted this to be done over the objection of the other side. The physicians had not testified, at that time, as to her injuries. We think there is no error in this ruling, for the order of proof was in the discretion of the trial Court; *Miller* v. *Leib,* 109 Md. 414. The appellee subsequently testified that when she moved her arm in the way she did before the jury, by which the sound was produced, that she suffered as she would from a sprained foot, and that before the accident she had never had a particle of pain from the arm. The physician who attended her testified that while he was treating her for her injury to her arm and shoulder that he would get the clink of pieces of bone rubbing against each other when he massaged or moved the arm. Finding no error in the rulings of the Court below, we will affirm the judgment.

*Judgment affirmed, appellants to pay the costs.*