# THE MAYOR AND CITY COUNCIL OF BALTIMORE *vs.* THOMAS HOLMES.

*Negligence—Contributory Negligence in Law—Liability of a Municipal Corporation for injury resulting from obstruction of a Street.*

Negligence is the want of such care as men of ordinary prudence would use under similar circumstances; and the question as to whether the act of a party amounts in law to negligence, depends upon the danger which might reasonably be expected to result therefrom.

In July, 1872, the City of Baltimore, through its Water Department, was engaged in laying water mains along a portion of the west side of Charles Street, the whole work, including excavating and repaving, being done in five days. The plaintiff was employed to haul material from a house on the west side of Charles St., above Saratoga St., and, coming to the house on the 4th of July for a load, found a ridge of stones, occasioned by the work referred to, along the west side of the street in front of and beyond the house. At this time he made no attempt to cross over the stones, but, stopping his horse on the east side of the street, carried the materials, with the assistance of persons working in the house, to the cart. On the 8th of July, the street being obstructed as before, he made his first load in the same manner, but on his return for a second load, not finding any one to help him, and the materials being heavy, he attempted to lead his horse over the stones. While so doing, the horse stumbled, and in falling struck the plaintiff on the leg and broke it. The horse was sound and steady, and the plaintiff was leading him carefully. The plaintiff having brought suit against the city for damages, the defendant offered evidence that the plaintiff had been cautioned by the owner of the materials to be careful in crossing the ridge, because he thought it was dangerous; and that the work which caused the obstruction had been carefully and promptly done by experienced and competent workmen. At the trial the Court submitted the question of negligence, both on the part of the plaintiff and defendant, to the jury; verdict and judgment being for the plaintiff, on appeal by the defendant, it was HELD:

That this instruction was proper, the act of the plaintiff not being contributory
negligence in law.

APPEAL from the Court of Common Pleas.

The case is stated in the opinion of the Court.

*Exception.*—The plaintiff offered three prayers, the first
of which is stated in the opinion of the Court, the others
are as follows:

2. If the jury further find that the Water Department
of the City of Baltimore, by its employés, although often
requested to make an opening for the passage of the
plaintiff in the ridge of stone, as often persistently re-
fused; and further find that there was no other or proper
way by which the plaintiff could reach the premises for
the purposes of his business, then the jury may take
into consideration the refusal of said authorities in esti-
mating their quantum of damages.

3. If the jury find the facts as set forth in the first
prayer, and also that the plaintiff was a laboring man,
and has been permanently injured for life by the negli-
gence of the employés of the city, under the direction of
its Water Board, then they may take that fact into con-
sideration in estimating the damages to the plaintiff.

The defendant offered five prayers, the second and
fourth of which are to be found in the opinion of the
Court, the others are as follows:

1. If the jury find from the evidence, that the injury
complained of, happened as testified to, from obstructions
placed in the bed of Charles street, which impeded the
free use of the street, then the plaintiff is not entitled
to recover.

3. If the jury find from the evidence that no notice
was given to defendant (before the injury testified to) of
the existence of the alleged obstruction in Charles street,

then the plaintiff is not entitled to recover, and a request from the witness Rollinson, (who owned the materials which were being hauled away) to the laborers of the Water Department that they would leave an opening in front of his house, was not notice of the existence of such obstruction to defendant.

5. That if they find from the evidence that the Water Department of Baltimore City, on or about July 8th, 1872, found it necessary, in connection with the duty of supplying the citizens with water, to lay a water main at and along the point on Charles street where the alleged injury to plaintiff happened, and that such work was done in a proper manner, with reasonable care and diligence, and that a ridge of stones was necessary to be along the opening that had been made, and that the plaintiff, in hauling to and from the house in question, which was on the west side of said ridge, had several times stopped his wagon on the east side of said ridge, and loaded and unloaded it from that position, because, as stated by him, he was "shy of crossing the stones," and on the day, at about 11 o'clock, A. M., when the injury happened attempted to lead his horse across the stones, so that he might get his load made quickly, and was warned at the time by his employer (the owner of the house) to be very careful in crossing the stones, because of the danger, and that in attempting so to cross, the horse stumbled and struck plaintiff, and thus broke his leg, then the plaintiff is not entitled to recover.

The Court, (GAREY, J.,) granted the first and third prayers of the plaintiff, and rejected his second, and granted the second and fourth of the defendant, and refused the others. The defendant excepted to the action of the Court in granting the first and third prayers of the plaintiff, and in rejecting its first, third and fifth prayers. The jury rendered a verdict in favor of the plaintiff for $1000,

and judgment was entered accordingly. The defendant appealed.

The cause was argued before Bartol, C. J., Stewart, Miller, Alvey and Robinson, J.

*Albert Ritchie* and *J. Nevett Steele,* for the appellant.

In support of its first prayer, the appellant cited *Altvater, et ux. vs. Mayor, &c. of Baltimore,* 31 *Md.,* 462.

The appellant was entitled to notice of the alleged obstructions. The Court ought to have granted appellant's fifth prayer, and taken the case from the jury.

If the verdict in this case be right, the city can never open its streets for the great purposes of supplying water or gas, without liability to damages, no matter what may be its care and precautions.

In this case, the facts from which the appellee's contributing negligence appears, are neither controverted nor numerous, nor complicated, nor is the legal rule or standard at all uncertain or varying. They are simple and undisputed, and the question of negligence was therefore a question of law. *Balt. & Ohio R. R. vs Shipley,* 31 *Md.,* 370; *Balt. City Passenger R. W. Co. vs. Wilkinson,* 30 *Md.,* 224; *Balt. & Ohio R. R. vs. Fitzpatrick,* 35 *Md.,* 46; *Balt. & Ohio R. R. vs. State, use of Dougherty,* 36 *Md.,* 366; *Biles vs. Holmes,* 11 *Ire.,* 16; *Heathcock vs. Pennington,* 11 *Ire.,* 640; *Foot vs. Wiswall,* 14 *John.,* 303; *Dascomb vs. B. & St. L. R. R.,* 27 *Barb.,* 221; *Purvis vs. Coleman,* 1 *Bosw.,* 321; *Fogg vs. Nahant,* 106 *Mass.,* 278, *S. C.,* 98 *Mass.;* 578; *Westchester R. R. vs. McElwee,* 67 *Pa. St.,* 311.

*W. J. Waterman,* for the appellee.

The charter of the city, Act of 1796, ch. 68, grants *inter alia* the power to remove and prevent nuisances, and this power imposes and means an obligation so to do.

*Mayor, &c. vs. Marriott,* 9 *Md.,* 160. An *obstruction* of a highway is a public nuisance. 7 *Bacon's Abr., Title "Nuisance,"* 226.

Blackstone classes among public nuisances, "annoyances in highways, &c. rendering them dangerous or inconvenient to pass," "either positively from actual obstruction, or negatively by want of repairs." 4 *Bl. Com.,* 167. It is therefore the duty of the city to keep its streets in a good or at least passable condition, so as to be used in their entire dimensions. And though it may break them up to lay pipes, it must forthwith replace them in their original condition. *Balt. City Code,* secs. 17, 18, *p.* 965.

In a great thoroughfare like Charles street, twenty-four hours obstruction would be gross negligence and a public nuisance. The obstruction becomes a public nuisance a moment after it could possibly be removed, and the longer it continues, the more aggravated it becomes, and any private injury or special damages resulting therefrom, may be the basis of civil suit, unless the City has no control over, or power to abate the nuisance. *Harrison vs. Sterett,* 4 *H. & McH.,* 540; *M. & C. C. vs. Marriott,* 9 *Md.,* 160; *Altvater, &c. vs. M. & C. C.,* 31 *Md.,* 462; *Houck vs. Wachter,* 34 *Md.,* 265.

The city was therefore responsible in damages for its negligence, unless plaintiff contributed by his negligence. 4 *H. & McH.,* 540; 9 *Md.,* 160; 34 *Md.,* 265. And even then, if the negligence or carelessness of the defendant was the proximate cause of the disaster, which care on its part would have avoided. *B. & O. R. R. vs. Dougherty,* 36 *Md.,* 366.

In *Wilkinson's Case,* 30 *Md.,* 224, plaintiff was in open violation of a wholesome regulation of the company, which was negligence in law. Holmes was violating no law The citizens have the right to the use of the whole of the streets, for the purposes to which they are dedica-

ted, and it was no violation to occupy any part of them for such purposes. Holmes being compelled to cross the ridge, used every precaution. There was at least no negligence in law; whether there was any in fact, was properly left to the jury. 36 *Md.*, 366.

ROBINSON, J., delivered the opinion of the Court.

This suit was brought to recover damages for injuries sustained by the plaintiff in attempting to lead his horse attached to a cart, over a pile or ridge of stones, which the declaration alleged, the defendant had *negligently suffered* to *obstruct* one of the *public streets* in the city of Baltimore.

The defendant through its Water Department, was laying water mains along the west side of Charles, between Mulberry and Saratoga streets, the whole work including repaving, being performed within five days.

The plaintiff was hauling materials from the old "Albert Mansion" on Charles street, north of Saratoga, and on coming to the house on the 4th of July for a load, he found a pile or ridge of stones, along the west side of the street, extending in front and about fifty yards beyond the house. No attempt was made by the plaintiff at this time to cross over the stones, but stopping his horse on the east side of the street, he carried with the assistance of persons working in the house, the materials to the cart. On the 8th of July, finding the street still obstructed by the pile of stones, he loaded his cart in the same manner, but when he returned for a second load, not finding any one to help him, and the materials being heavy, he attempted to lead the horse over the stones and in so doing, the horse stumbled, and in falling struck the plaintiff on the leg and broke it. The horse was sound and steady and the plaintiff was carefully leading him over.

Evidence was offered by the defendant to prove that the whole work in laying the mains occupied about five

days and that it was carefully and promptly done, the men employed being experienced and competent workmen. The plaintiff was cautioned to be careful in crossing the ridge of stones, because the witness thought it was dangerous.

Upon these facts the Court instructed the jury:

1st. That if the defendant "pulled up the pavement and allowed the same *negligently* to remain for a considerable length of time, by reason of which the plaintiff in the course of his employment and duty, and without any negligence or fault on his part, had his leg broken, then the plaintiff was entitled to recover."

2nd. That if the defendant found it necessary to lay water mains on Charles street, along and at the point where the plaintiff was injured, and the whole work was done by the employés in a proper manner, and with reasonable care and diligence, the plaintiff was not entitled to recover.

3rd. That if the plaintiff did not use reasonable care and diligence, and the injury complained of could have been avoided had he done so, then he was not entitled to recover.

The question of negligence both on the part of the plaintiff and defendant, was fairly put to the jury. The defendant contends, however, that the attempt on the part of the plaintiff to lead his horse over the pile or ridge of stones, was such a *glaring act of carelessness* as *to amount in law* to contributory negligence, and that the Court erred in refusing so to instruct the jury. Negligence is the want of such care as men of ordinary prudence would use under similar circumstances; and the question as to whether the act of the plaintiff *amounted in law to negligence*, depended upon the danger which might reasonably be expected to result therefrom. If the danger was so great that no sensible man would have incurred it, the plaintiff was not entitled to recover, but

Mayor, &c., of Baltimore *vs.* Holmes.

this of course raised a question of fact, which we think was properly submitted to the jury. This case is not unlike *Clayards vs. Dethick & Davis,* 64 *Eng. Com. Law,* 439, where the Commissioners of Sewers dug a trench in the only outlet from a mews, leaving a narrow passage, on which they heaped rubbish, and a *cabman* in the exercise of his calling, attempted to lead his horse over the rubbish, and the horse fell and was killed. It was held that the plaintiff was not disentitled to recover, because he had at some hazard, created by the defendant, brought his horse out of the stable, and that it was properly left to the jury whether he had persisted contrary to express warning, as to which, there was contradictory evidence, in running upon an obvious danger.

PATTERSON, J., said "The whole question was whether the danger was so obvious, that the plaintiff could not, with common prudence, make the attempt. That was properly put to the jury.";

Lord DENMAN, C. J., "I have no doubt that I left it to the jury to say whether the plaintiff had used ordinary care, for I always leave cases of the kind in that manner."

In this case, we think the Court was right in submitting the question of negligence both on the part of the plaintiff and defendant to the jury, and the judgment below will therefore be affirmed.

*Judgment affirmed.*