# THOMAS F. BAKER *vs.* THE MARYLAND COAL COMPANY.

*Negligence—Master and Servant—Risks of the Employment—Brakeman in Mine Crushed Between Car and Side of Tunnel—Contributory Negligence—Questions for the Jury.*

The defendant, a coal mining company, operated a tramway running through a tunnel or gallery in its mine over which cars had been drawn by horses until shortly before the injury suffered by the plaintiff, when a wire rope was substituted. At the time of the change, the tramway was straightened and in some places the tracks were brought so near to the sides of the tunnel that it was unsafe to stand between moving cars and the wall of the tunnel. The work of widening the tunnel at these points was being carried on but not completed when plaintiff was acting as a front brakeman on cars drawn through the tunnel. Seeing that his car was in danger of running upon the wire rope, he jumped from the front platform and applied the brake, which was on the side of the car, and could only be worked by one who was walking or running with the car. While in this position he was crushed between the moving car and the side of the tunnel. Plaintiff did not know that danger existed at this point, but had always found it safe before the tracks had been straightened. In an action to recover damages for the injury thus inflicted, *Held,*

1st. That upon these facts, the questions of defendant's negligence and plaintiff's contributory negligence should be submitted to the jury.

2nd. That the cause of plaintiff's injury was not one of those dangers which employees are required to look out for, but was rather one that the employer might be expected to guard against, and that since plaintiff had seen men widening the tunnel at the narrow places he might reasonably expect that danger from this source did not exist.

When the nature of the act relied on to show contributory negligence can only be determined by considering all the circumstances attending the transaction, it is within the province of the jury to characterize it.

Appeal from the Circuit Court for Allegany County. At the trial the plaintiff offered the following prayers:

*First.*—That if the jury find that the defendant owned
and operated a coal mine in Allegany County, and that the
rooms of said mine were connected with the mouth of the
mine by an underground heading or gallery more than a
mile long, through which defendant transported its coal
from said rooms to said mouth of the mine in mine cars
drawn by horses and run on railway tracks or rails laid on
the floor of said heading, and that several weeks before the
happening of the accident sued for, the defendant relocated
said railway along said heading for the purpose of straight-
ening the same, and in doing so at several places along said
heading, including the place said accident occurred, laid
said railroad tracks so close to the sides or walls of said
heading as to render the use of said railways for cars there-
on unsafe for the persons in charge of said cars, along said
places, and thereafter negligently suffered the same to re-
main in said condition, and that the defendant thereupon
changed the method of hauling said cars from horses to a
steel rope, and thereafter hauled its cars along said head-
ing with said rope operated by a stationary engine at the
mouth of said mine, and that upon the 18th day of De-
cember, 1893, the plaintiff, while in the line of his employ-
ment by the defendant, as front brakeman on one of the
trains of cars of the defendant, being drawn by said rope
and while attending to his duties as such, was caught be-
tween said cars and the wall of said gallery at one of said
dangerous and unsafe places (if the jury find the same were
dangerous and unsafe), and that in consequence of such
dangerous and unsafe condition of said place, he was there-
upon crushed by said cars against said wall and injured,
and shall further find that such dangerous and unsafe con-
dition of said place was known to the defendant, or by its
exercise of ordinary care and prudence could have been
known by it, and in time to remedy the same and prevent
said accident, and shall further find that the plaintiff was
ignorant of the unsafe and dangerous condition of said head-
ing at said place, or could not by the use of ordinary care

and prudence on his part have known the same, and shall further find that at the time of said injury the plaintiff was using and exercising due and ordinary care and caution on his part, then the plaintiff is entitled to recover in this action. (Rejected).

*Second.*—That if the jury find for the plaintiff, then, in estimating the damages, they are to consider his health and condition before the injury complained of as compared with his present condition in consequence of the said injury, and whether the same is in its nature permanent, and how far, if at all, it is calculated to disable him from engaging in those employments, for which in the absence of such injury he would have been qualified, and also the physical and mental suffering, if any, to which he was subjected by reason of said injury, and to allow him such damages as in the opinion of the jury will be a fair and just compensation for the injury which he has sustained.    (Rejected).

The Court below (STAKE, J.), rejected the plaintiff's prayers and granted the defendant's prayer, by which the jury was instructed : (1). That there is no evidence in the case legally sufficient to entitle plaintiff to recover under the pleadings in the cause.    (2). That there is in the case no evidence of negligence on the part of the defendant.  (3). That the undisputed evidence in the case shows that the accident complained of was the direct result of the want of ordinary care and prudence on the part of the plaintiff, and that therefore he is not entitled to recover.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, PAGE and ROBERTS, JJ.

*Benjamin A. Richmond* (with whom was *D. James Blackiston* on the brief), for the appellant.

We contend that on all the evidence it is impossible to see upon what the claim of contributory negligence is based. It was contended by counsel for the appellee, and one-third of the record is taken up to prove that plaintiff had been a

driver in that mine for years, and was perfectly familiar with tunnel or heading from one end to the other.    This is very true, but all this knowledge or experience so acquired cuts absolutely no figure in the case.    The plaintiff was familiar with the relative positions of the sides of the tunnel and the tracks, *as they had been before the change.*    He was *not* familiar with them *after the change*, and could not have become so in three or four days working with the rope.    He, of course, could become cognizant in a general way of the various changes along the mile or more stretch of track. All his previous experience or knowledge of the place therefore went for nothing.    It was safe then.    It was only *after* the change that it was made unsafe.    Of the walls themselves he never had anything to complain.    With the track in the center they were safe.    It was only when the track was moved close to one side that the wall became dangerous. The previous experience of the plaintiff in that heading, so much relied on by appellee's counsel and the Court below, therefore could in no way warn the plaintiff of danger, since his accident arose in no way from a change in the heading, but from a recent change of the *tracks in the heading* which made it dangerous.

It was said, however, that the plaintiff could have seen the changes in the track while driving over them even for three or four days. He might have done so.    He doubtless did notice some of the changes in the track, but there were very many of them extending over more than a mile in a dark tunnel.    He also saw the company stripping the walls when the changes made the passage ways too narrow. Without any particular scrutiny he had the right to assume that the company would not shift the track to the wall and then not strip the wall.    He had the right to assume that no company having any proper regard for the safety of its employees, would make and leave a man-trap like that in a mine and then send in green and inexperienced men to work with the new and dangerous machinery.    Under these peculiar circumstances the company should be held to the

highest degree of care in the preparation of the machinery and surroundings. To leave an obscure and unapparent danger like that lurking in a dark tunnel, and then to start green men to work in it, was a piece of culpable carelessness which it seems to us no fine spun sophistry can excuse. It was a reckless act, which, stripped of legal refinements, strikes the frank, every-day mind, with abhorrence. There is about it a want of good faith, and a wanton disregard of the safety of our fellow creatures, which no manly argument can justify, and which no law should tolerate. Of the company's gross negligence there can be no question. Then what can be found in the record to show that the plaintiff directly contributed to the injury by his negligence? He swears he did not know of the dangerous place. Other witnesses who were as familiar with the place as plaintiff say they did not know of it. But it is said he *ought* to have known of it. Why ought he to have known of it? He did not help to change the track along the 8th and 9th "right" where he was hurt. The men who changed the track ought to have known of it, and Mr. Bracket, who went along there should have known of it. Did he know of it? If he did, he should have fixed it, since it was his business to see that it was safe before he started his new rope. But it was not the plaintiff's business to closely examine every place along a whole mile. He had a right to assume that the company had not set a man-trap for him. But it is said the plaintiff should have looked before he got off the car, and if he had done so, he would have seen the danger. Not at all. Where he got off the car was not dangerous. It was wide enough there. It was hundreds of feet ahead where the unseen and unforeseeable danger was lurking. The Court will observe from the record that after he got off the car, he ran along beside them for some distance, putting down brakes before he was suddenly confronted with his danger. Under these circumstances of what use to him was his previous knowledge of any changes in the track he might have noticed? *He could not definitely locate in his mind the*

*exact distances ahead of each place of safety and of danger*, no matter how well he was acquainted with the place in a general way.

*William E. Walsh*, for the appellee.

The law imposes upon the servant the "duty of self-protection and always assumes that this instinct, so deeply rooted in human nature, will guard him against all risks and dangers of which he has knowledge or the means of knowledge." He must use reasonable care in examining his surroundings to learn the dangers likely to beset him. He must not go blindly about his work, but is bound to use his eyes to see that which is open and obvious and apparent to anyone so using them. The duty of the master is not to see that the servant actually knows; he has a right to rest upon the probability that anybody would know what was generally to be seen by his own observation; in such case, knowledge on the part of the servant will be presumed. *State, use Hamelin* v. *Malster & Reaney*, 57 Md. 287, 306; *Yates* v. *McCullough Iron Co.*, 69 Md. 370, 378; *Crown* v. *Orr et al.*, 140 N. Y. 450, 452; *Batterson* v. *Railway Co.*, 53 Mich. 125, 129; *Bailey's Master's Liability*, pp. 159, 162–6, 175–6, 181; *Thomas on Negligence*, p. 740; 2 *Thompson on Negligence*, pp. 1008–9; *Wharton on Negligence* (2nd ed.) sec. 206.

Regarding appellant's own testimony alone, can it be successfully contended that he ought not to have known and guarded against the danger of which he complains? Is it possible to say that he had not all the means of knowledge open to anyone? Can it be said he was not bound to make use of those means of knowledge? Can it be denied that it was his duty to know and that ignorance is no excuse—that is to say, that he law will presume he had knowledge inasmuch as he had every possible opportunity for acquiring it? Consider his confession, that he had 12 or 14 years experience around mines; that he had driven 3 or 4 years in the mine in which he was hurt; that

*as a new hand* he had learned the roads in that mine in about ¾ of a day; that he carried a larger, brighter light than miners used in the same mine; that he was about the mine all the time the improvements were going on; that the work was done under his observation and partly with his aid; that he knew changes were made in the location of the track, sometimes bringing it nearer the rib and sometimes taking it further away; that he knew the tracks had been shifted from the mouth of the mine up; that he passed over the track daily both before and after it had been shifted; that he was supposed to know the roads. Was it the duty of the company to send a man through the heading especially to observe at what points the track had been moved nearer the rib?—and for the purpose of warning a servant who helped do some of the shifting, who admits he saw it all done, and whose employment took him through the heading and over that track many times daily after as well as before the change?—for the purpose of warning an experienced servant who had driven through that heading for 3 or 4 years and whose necessary familiarity with it would instantly detect a change?—for the purpose of warning a man who claims that as a green hand he had learned the ins-and-outs of that same heading in ¾ of a day? It is simply impossible that an old employee, who as a new hand became acquainted with the roads in a new mine in less than one day, could after three or four years' experience, pass over the same roads daily for a week or two without observing changes made in them. If he could, if anyone could have Baker's admitted knowledge and not profit by it, then he could not be helped by warning.

Appellant "understood that he was not working upon a road which was finished and in good repair;" that the rope and machinery were new and were being tried and tested; that everything was in a manner unsettled, and he knew that this "subjected him to greater risks and perils than would be incurred under ordinary circumstances. In entering the defendant's service he assumed the hazards incident

to the same." *Brick* v. *Railroad Co.*, 98 N. Y. 211, 215; *Gulf Ry. Co.* v. *Jackson*, 65 Fed. Rep. 51; *Finalyson* v. *Utica Co.*, 67 Fed. Rep. 510; *Armour* v. *Hahn*, 111 U. S. 313. The duty of the master to warn the servant of conditions or alterations likely to increase the risks incident to the employment is not imposed unless the added danger "arises from causes hidden and secret, and such as would reasonably escape his observation." *Railroad Co.* v. *Stricker*, 51 Md. 69; *Pullman Co.* v. *Laack*, 18 L. R. A. 215; *Northern Ry. Co.* v. *Blake*, 63 Fed. Rep. 47. The testimony of his witnesses takes from under appellant whatever vestige of a foundation his own admissions left him. They say anyone with eyes could tell where the track had been shifted; that the change was open and obvious and would call attention to itself, that one familiar there would see the change the first time he passed it; that the loosened dirt would show the track was not in its old stand; that the moving of the track would as a matter of fact tell whether it was nearer to or further from the rib; that Baker should have known of the narrow place where he was injured and that it was his business to find it out.

FOWLER, J., delivered the opinion of the Court.

This is an action to recover damages for injuries alleged by the plaintiff to have been sustained by him by reason of the wrongful and negligent act of the defendant. The defence is contributory negligence. The controlling question is whether the Court below was right in instructing the jury: first, that there was no evidence in the case of negligence on the part of the defendant; and, second, that the alleged injury was the direct result of negligence on the part of the plaintiff himself, and that therefore their verdict must be for the defendant.

The principles of law applicable to cases like this have been frequently and so fully settled in this State by the decisions of this Court, that they require no farther discussion at this time. The only difficulty is to ascertain and fix

definitely the significance and effect of the admitted facts in each particular case.   As has been said (*Maugan's case*, 61 Md. 60),  " Accidents occur and injuries are inflicted under an almost infinite variety of circumstances, and it is quite impossible for the Court to fix the standard of duty and conduct by a general and inflexible rule applicable to all cases, so that a departure from it can be pronounced negligence in law."   In the same case it is also said that the evidence of contributory negligence must be very clear to justify a Court in taking the case from the jury :  " It must present some prominent and decisive act in regard to the effect and character of which no room is left for ordinary minds to differ."   And in the case of *Cook* v. *Street Railway Company*, 80 Md. 558, there is a clear exposition of the rule, which will be found, we think, particularly applicable to the case before us.   In the case just cited the present CHIEF JUSTICE McSHERRY, delivering the opinion of the Court, said,  " Where the nature and attributes of the act relied on to show negligence contributing to the injury can only be correctly determined by considering all the attending circumstances of the transaction, it falls within the province of the jury to pass upon and characterize it, and it is not for the Court to determine its quality as matter of law."

Having thus briefly alluded to the general principles, we will ascertain what is the act of the plaintiff relied on by the defendant to show contributory negligence.   To do this will require a brief recital of the evidence.

The defendant company is the owner of a coal mine in Allegany County which is operated by means of a tramroad running through a tunnel which is constructed in the mine.   Just before the happening of the accident by which the plaintiff was injured a change was made in the mode of moving the cars over this tramway.   For a long time the cars were drawn by horses, but now and at the time of the injury complained of the motive power was derived from a stationary steam engine placed outside the mine, to which

was attached a wire rope, which in turn was attached to the cars. In order to use the new motive power with advantage it was found necessary to straighten the tramway, and the result was that in many places the cars were brought so near to the sides or ribs of the tunnel that there was not room enough for a man to stand safely in the remaining space, while the cars were moving. It appears that the change from horse to steam power was made in a very few days, between the seventh and twelfth of December, and that shipments of coal by means of the new system were begun on the thirteenth of December, and before the tunnel through which the cars were drawn had been made sufficiently wide at all places so that a man could safely work the brakes attached to the cars, and operate the signal wire communicating with the engine at the mouth of the mine. It also appears from the testimony of the plaintiff that at the time of the accident he was acting as front brakeman, and that it was a very important part of his duty to put down the brakes when there was danger that the cars would run upon and cut the wire. When injured the plaintiff was at his post on the front platform watching the wire rope, and discovering that it "was not rolling on the track right," he jumped off the car, as it was necessary for him to do, for the purpose of checking the train by means of brakes which were attached to the side of the car, and which could be worked only by one who was walking or running with the train, between it and the side of the tunnel. While in this position, where it is clear from his testimony his duty called him, he was suddenly caught between the side of the moving cars and the side of the tunnel and severely injured. The evidence shows that men had been and were at the time of the accident, engaged in widening those dangerous places, similar to the place where the plaintiff was injured. The plaintiff did not know of this place being dangerous ; but, on the contrary, he had always found it safe before the straightening or relocating of the tracks. The witness Recker, who was mine boss, testified

he did not know of the danger there, and another witness said that immediately after the accident the tunnel was sufficiently widened there to ensure safety. Of course all this testimony of the plaintiff and his witnesses was more or less contradicted by the defence; but mere contradiction can never justify the Court in finding a legal insufficiency of evidence.

We have not been able to find in the testimony of the plaintiff, nor in that of the defendant, evidence of any prominent and decisive act on the part of the former which should convict him of negligence under all the " attending and surrounding circumstances " of the case. Admitting the danger to which the plaintiff was exposed by the act of the defendant, it is urged that the plaintiff should have known it and protected himself from it; or that he undertook the work with his eyes open and with a knowledge of the necessary dangers connected with the employment he assumed the risk, and must himself suffer the consequences. But it appears to us that the danger to which the accident is ascribed was not one of those ordinary dangers which the employees should be required to look out for and avoid, but rather one of those dangers which they may reasonably expect that proper precaution had been adopted by the employer to remove. It is not reasonable to suppose that the employees of the defendant would be subjected to such a danger in the performance of the ordinary work of taking the coal from the mine, nor was it unreasonable for the plaintiff to assume, that the dangerous places in the tunnel had been made safe. *Abbotts' case,* 75 Md. 160; *Stricker's case,* 51 Md. 69; *Moran's case,* 44 Md. 292. All danger was removed immediately after the accident, and there is nothing to show that the same could not have been accomplished before the damage was done, if the defendant had acted with prudence and caution. We do not think it at all clear that the plaintiff could have been expected to know of the danger. On the contrary, there were many others, who had equal opportunities, who did not know of it. Having seen men engaged

in widening the tunnel at the narrow places, it was reason-
able to suppose, or one might be led to expect, that all lia-
bility to danger from that source had been obviated. With-
out prolonging this opinion by further detailed examination
of the evidence, we think the case should have been allowed
to go to the jury.

We see no objection to the prayers of the plaintiff. They
appear to put the whole case fairly and fully to the jury.

> *Judgment reversed and new trial
> awarded.*

(Decided June 17th, 1896).