WILLIAM M. McCARTHY ᴀɴᴅ MIKE O. HERRON, Co-partners, Trading as McCarthy & Com- pany, and THE MAYOR and CITY COUNCIL OF BALTIMORE *vs.* OLIVIA F. CLARK.

*Streets; obstructions on sidewalks; liability of Baltimore City; contributory negligence; what must be shown; independent · contractor; defense, when not accountable.  Pedes- trians; rights of.  Prayers; excluding material issues.  Damages; loss of hearing; suffi- ciency of claims in declaration.*

The question whether under the existing provisions of the City Charter the City of Baltimore would be relieved of liability to persons injured by nuisances on the public streets, caused by agencies other than those of the municipality, on the ground that the police department has the sole power of abating such nuisances, is immaterial when the municipality itself was instrumental in creating the occasion for the obstruction.                    p. 458

In a contract with the City of Baltimore for the building of certain sewers, it was provided that the work should be done under the general supervision of the City Engineer, and that the contractor should comply with all the instructions given by him; it was *held,* that for injuries received because of

obstructions in the streets placed there in the prosecution of the work the city could not, as a matter of law, escape liability on the ground that the contractor actually doing the work was an independent contractor.                          p. 459

A frame for a manhole was placed partly on a sidewalk by contractors building a sewer for the City of Baltimore; the city had reserved control and supervision of the work. There was a dispute as to how far the obstruction interfered with the sidewalk, and as to whether the contractors had placed and kept a lighted lantern upon it. The plaintiff, walking on the sidewalk at night leading a small child and carrying another in her arms, did not see the obstruction and fell across it, and brought suit against the city and contractors for the injuries sustained. It was *held,* that under the cirsumstances there was no evidence of contributory negligence on the part of the plaintiff to justify taking the case from the jury.                                         p. 464

When an employer retains control of the work, the fact that he is operating through the agency of a contractor does not relieve him from liability for damages for injuries caused to third parties.                                      p. 460

If a municipal corporation and contractors engaged in work for it, do not observe due and reasonable care in the selection of the place and the position for materials during the prosecution of the work, and if the materials are so located as to be needlessly dangerous to pedestrians, the liability is not commensurate with an obligation merely to make diligent efforts to aviod the consequences naturally to be anticipated from such negligence, such as maintaining a light upon the obstruction.                                         p. 461

In such an action if there is any evidence from which the jury might find that the defendants without reasonable security kept the obstruction on the pavement, it is error to instruct the jury that this conduct involved no element of negligence.                                     p. 463

In a suit against a municipal corporation for injuries received from obstructions placed on the sidewalk, in order for the defense of contributory negligence of the plaintiff to be avail-

able, there must be some such feature of recklessness on his part as would leave no opportunity for difference of opinion as to its imprudence in minds of ordinarily prudent men.

p. 464

Pedestrians have a right to assume that sidewalks are safe, and a plaintiff suing for damages for injuries received in stumbling over an obstruction on a sidewalk can not be declared guilty of contributory negligence merely because in the obscurity she did not observe the obstruction.     p. 465

Where there was some evidence of negligence on the part of the city and the contractors in placing and maintaining the obstructions on the sidewalk, and some conflict of evidence as to whether a light was upon it, prior to the accident, a prayer taking the case from the jury on the theory that there was no legally sufficient evidence of negligence on the part of the defendants is erroneous.     p. 463

In a suit against the City of Baltimore and a contractor for injuries received by the plaintiff in stumbling over an obstruction on a sidewalk, placed there by the contractor, it is admissible for the plaintiff to offer in evidence an ordinance of the city requiring the display of a lighted lantern on any building materials left on the street at night.     p. 467

The defendants have the right to offer evidence of their care and diligence in maintaining the light.     p. 467

A prayer is erroneous which excludes from the jury issues proper for their consideration, and of which there is any evidence in the case.     p. 462

Where the declaration, in an action for damages for injuries received through the defendant's alleged negligence, avers, among other injuries, that the plaintiff's head was badly bruised and her system generally shocked, and that she sustained other personal damages, the loss of the plaintiff's hearing, as a consequence of the injury, is competent to be proved as an element of damage.     p. 467

In such a case the question whether the street on which the accident occurred was a well-lighted block, as compared with other streets, is immaterial.     p. 468

*Decided April 5, 1911.*

Appeal from the Court of Common Pleas of Baltimore City (HEUISLER, J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, THOMAS, PATTISON and URNER, JJ.

*W. H. DeC. Wright,* for the Mayor and City Council of Baltimore, appellant.

*Vernon Cook,* for McCarthy & Company, appellant.

*J. Cookman Boyd,* for Olivia F. Clark, appellee.

URNER, J., delivered the opinion of the Court.

The appellee was seriously injured by stumbling and falling at night over an iron manhole frame temporarily deposited on a sidewalk in Baltimore City and intended for use in connection with a system of sewers then in course of construction. The suit was against the municipality and McCarthy & Company, the contractors engaged in the work under employment by the city, and the declaration alleges negligence on the part of the defendants in placing the frame upon the pavement and in permitting it to remain there for a long space of time without light or signal of any kind to warn the plaintiff of its location. A judgment upon verdict was recovered by the plaintiff, and the defendants have appealed. The record contains fifteen bills of exception, of which fourteen relate to rulings of the Court below on the admissibility of evidence and one to its action on the prayers. There are certain general questions of liability involved in the exceptions, and these will be first considered.

Independently of the theories common to both defendants, the city claims exemption from responsibility for the accident upon the ground that the sewer construction was in charge of independent contractors and that the frame which injured the plaintiff was deposited by them, without the knowledge of the city officials, at a point remote from the

line of the work and where the representatives of the municipality could not have anticipated that it would be placed, and that, therefore, the rule of *respondeat superior* does not apply. It is further insisted that the city is not liable merely on account of its omission to remove or guard the obstruction because, as it is asserted, the exclusive authority for such purposes is vested in a police department over which the municipality has no control, and its own duty has been performed and its power exhausted by the passage of prohibitive and punitive ordinances on the subject. In support ·of the proposition last stated, the cases of *Altvater* v. *Baltimore,* 31 Md. 462, and *Sinclair* v. *Baltimore,* 59 Md. 592, were cited. It was held in these cases that the City of Baltimore was not liable to persons injured by nuisances on the public streets caused by agencies other than those of the municipality for the reason that under the laws then in force the sole power of abating such nuisances was conferred by the law upon the board of police commissioners of the city. Whether this principle would be applicable under the existing provisions of the City Charter and the decisions of this Court in *Baltimore City* v. *Beck,* 96 Md. 191, and *Baltimore City* v. *Walker,* 98 Md. 637, it is not necessary for us to determine, because it is obvious that such a doctrine could not be applied to a case in which the municipality was itself instrumental in creating the occasion for the obstruction and because upon the facts now before us we are of the opinion that the city must be held to sustain such a relation to the cause of the accident. It is not entitled to be exonerated on the ground that the particular acts alleged to constitute negligence were done by independent contractors beyond the scope and ·intent of the work committed to their charge.

The plans for the work in connection with which the manhole frame was to be used indicated a line of sewer along the east side of Broadway, a wide avenue with a central parkway. The point at which the frame was deposited and the accident occurred was on the west side of the avenue and about seventy-

five feet south of Preston street. The sewer was not actually constructed through this block according to the location contemplated by the original plan, another course parallel to Broadway in this locality having been subsequently adopted. It was testified by the employee who delivered the frame that it was placed on the west side of the avenue because this was a more convenient point on account of the pavement on the east side being to some extent blocked with pipes. The agreement between the city and the contractors provided that the work should be done under the general supervision of the city engineer who was authorized to direct the order in which and the points at which it should be prosecuted. It was stipulated that the contractors should immediately comply with all the instructions given by the engineer.

It appears, therefore, that the placing of the frame at the point of the accident, was in connection with construction work in which the city was interested and over which it reserved control. In view of such conditions we are unable to hold the city exempt from liability as a matter of law upon the grounds suggested. The principles which govern the case before us are settled by the decisions of this Court in *Thillman* v. *Baltimore City,* 111 Md. 131, and *Baltimore City* v. *O'Donnell,* 53 Md. 110. In the former case an independent contracting company, employed by the city to grade, pave and curb a street, changed the condition of an alley opening into the street as a result of which surplus water flowing in the alley, instead of passing off into a sewer as it had previously done, flooded the cellar of plaintiff's house. It was provided in the contract between the contractors and the municipality that the work should be done under the inspection of the city engineer. The evidence was held legally sufficient to show that the change in the alley was made by the contracting company in connection with the performance of its contract to pave the street, and it was decided that the city as well as the company was liable for the resulting injury. In *O'Donnell's case* an agent of a contractor, employed by the city to repave a street, caused a rope to be

suspended to prevent travel on it while the work was in progress. A lamp was attached to the rope as a warning, but it was immediately broken and extinguished by stones thrown by boys. The employee in charge took the lamp to his home to repair it, but did not replace it the same night. While he was absent° the plaintiff in attempting to drive his hack up the street was injured by coming in contact with the rope. None of the city officials knew that the rope had been stretched across the street. The city nevertheless was held to be liable.

In each of the cases cited it was decided to be the duty of the city to have its work done in such manner as to avoid injuries to the public, and that it could not be relieved of this obligation by committing the work to an independent contractor. In the *Thillman case,* as in the present, there was the additional consideration that the city had stipulated for the supervision and control of the work by its own engineer, and it was stated as a general rule, which we find clearly applicable here, that where an employer retains control of the work he is not relieved of liability by reason of the fact that he is operating through the agency of a contractor.

In this case the city sought to have the jury instructed to find a verdict in its favor upon the theory of non-liability which we have discussed, but its prayer to that effect was rejected by the Court below and for the reasons stated we must concur in the ruling.

The proposition upon which the contractor defendants placed most reliance was presented in the third prayer, offered separately on their behalf, in which the Court was asked to instruct the jury that if they found from the evidence that these defendants caused a light to be placed on the manhole frame in question on the evening of the accident and prior to its occurrence and that subsequently the light was stolen or removed by some person unknown, and that the defendants did not know of its removal, and that they made reasonable efforts to maintain a light on the frame on the evening of the

accident, then they were not legally guilty of any negligence, and the verdict must be in their favor.

There was evidence tending to show that the contractors had caused a lamp to be placed on the frame about half past five o'clock on the evening of the accident. Their employee passed that way about a quarter of seven and found the lamp still lighted and in position. His next visit to this point was at a quarter past eight, and the lamp was then gone. The accident occurred about seven o'clock. It was contended that this evidence was legally sufficient to support the theory of the prayer and that its rejection by the Court below constituted reversible error.

If the only negligence charged in this case related to the maintenance of a light on the manhole frame during the hours of darkness, we might accept as sound and just the principle which the prayer under consideration invoked. The difficulty, however, in the way of granting such an instruction under the pleadings and evidence in the present record is that there is a distinct issue as to whether in *placing and keeping* the frame on the sidewalk, at the point and in the position indicated by some of the witnesses, the defendants were guilty of negligence. The prayer proposed to instruct the jury that if the defendants were not negligent in their efforts to keep the lamp in place and lighted they could not be found to have been negligent in *any* respect. Such an instruction could not have been granted without disregarding the preliminary question of negligence to which we have referred. If the defendants did not observe due and reasonable care in the selection of the place and position for the deposit of the frame during the prosecution of the work, if in fact it was so located as to be needlessly dangerous to pedestrains, then the liability of the defendants could not justly be said to be commensurate merely with an obligation to make diligent efforts to avoid the consequences naturally to be anticipated from such negligence. Their responsibility could not be discharged simply by the use of due care to maintain the light if there was no reasonable necessity to have

the obstruction at all in the position in which it was placed. Their duty was to "deposit the material in a reasonable place," as well as to "place guards or give reasonable precautionary signals to warn the public." *Sinclair* v. *Baltimore City, supra.*

The record here shows, as already stated, that the manhole frame over which the appellee fell was deposited on the west side of the street, opposite the intended course of the sewer. It was testified by the contractors' material man that the frame was delivered at the point of the accident about October 18th by the supply company from which the contractors were obtaining this class of material for the work. He stated that the frame belonged on the east side of the street and that nobody told the supply company to put it on the west side. He learned on the following day of the location of the frame and placed a light on it every night from October 24th to the last week in November. The manager of the sales department of the supply company testified that the frame was supposed to go on the east side of Broadway and might possibly have been placed there, but as the pavement there was partially blocked with sections of terra cotta pipe it was more convenient to place it on the other side. He described the frame as being three feet two inches in diameter over all at the bottom, two feet at the top, and nine inches high. It had a flange around the bottom about six inches wide and three-eighths of an inch thick. The flange represented practically the difference between the upper and lower diameters just mentioned. There was a cover adjustable to the top of the frame, and both parts were painted black. The total weight was four hundred and twenty-five pounds. There was evidence adduced by the plaintiff tending to show that the frame lay on the pavement about a foot inside of the curb, with the flange uppermost. It was with the flange that the plaintiff testified she came in contact as she was passing along the sidewalk. On behalf of the defendants there was testimony to the effect that the frame was in proper position with the flange down and that it extended

over the curb.   It is obvious that the two positions thus indi-
cated represented a material difference in the extent of the
interference liable to be caused by the frame to public travel
on the pavement.   In the latter position the flange would
form no part of the obstruction, and with the frame extend-
ing over the curb there would be very slight probability of
its constituting any impediment whatever to the free use of
the sidewalk.   In the former position, however, it would
form an obstruction three feet wide extending to a point on
the pavement four feet from the curb and would be a serious
menace to the safety of pedestrians.   As there was evidence
from which the jury might find that the defendants with-
out reasonable necessity kept this large and heavy frame on
a public pavement and in the position last indicated, the
Court would not be justified in ruling as a matter of law that
such a course of conduct involved no element of negligence.
It is because the third prayer offered on behalf of the con-
tractors would have excluded this issue entirely from the con-
sideration of the jury that we must hold it to have been
properly rejected.

In the cases cited to support the theory of this prayer the
impediments to travel against which the public was to be
guarded were necessary incidents of the work in connection
with which they existed.   They consisted of excavations or
structures immediately involved in the prosecution of the
work.   The question of negligence in the deposit in an
unsuitable place and in an improper position on a public
thoroughfare of materials designed for subsequent use at
another point was not involved.

The second prayer of the same defendants sought to have
the case withdrawn from the jury on the ground of con-
tributory negligence.   It was urged that the obstruction in
question was of such size that the plaintiff would have noticed
it if she had paid due attention to the condition of the pave-
ment on which she was walking; and it was argued that
while she had the right to assume that the sidewalk was
safe in a general way, yet she was bound to exercise some

precaution to avoid obstacles. The testimony of the plaintiff upon this point was to the effect that when the accident occurred she was on her way home from a walk with her two little grandchildren, one of whom she was carrying in her arms. She was going straight along the pavement in her usual way, looking ahead and downward, but did not see the manhole frame until she had stumbled and fallen over the flange. She testified that she did not know that there was such an obstruction on the pavement, that there was no light on it, and that while there were some street lamps in the square at a distance, it was dark at the place she was injured. As she rose from the ground after her fall she could see the frame, and it was also visible as she afterwards sat on the doorstep in front of which it lay. She stated that after falling over it and having "a forcible feeling of it" she could see it from the position just mentioned, but that she did not notice it in the first instance on account of the darkness and because she had no reason to suppose there was any obstruction on the sidewalk. In the face of this testimony the Court below was clearly right in refusing to rule that the conduct of the plaintiff amounted in law to contributory negligence. To warrant such a ruling there would have to be "some such feature of recklessness as would leave no opportunity for difference of opinion as to its imprudence in the minds of ordinarily prudent men." *B. & O. R. R. Co. v. State, use of Wiley,* 72 Md. 40, or "some prominent and decisive act in regard to the effect and character of which no room is left for ordinary minds to differ." *Baker v. Maryland Coal Company,* 84 Md. 27. In *Mayor, etc., of Baltimore v. Holmes,* 39 Md. 249, where the injury sued for resulted from the attempt of the plaintiff to lead his horses over a ridge of stones in a public street, it is said: "Negligence is the want of such care as men of ordinary prudence would use under similar circumstances; and the question as to whether the act of the plaintiff *amounted in law to negligence,* depended upon the danger which might reasonable be expected to result therefrom. If the danger

was so great that no sensible man would have incurred it, the plaintiff was not entitled to recover, but this, of course, raised a question of fact, which we think was properly submitted to the jury." In the present case there is absolutely nothing to indicate a want of due care upon the part of the plaintiff. She had the right to assume that the sidewalk was safe for pedestrians, and we would not be justified in declaring her guilty of contributory negligence merely because she did not observe in the obscurity to which she testified the low dark object over which she stumbled.

The only Maryland case cited by the defendants in this connection is *Knight* v. *Baltimore City,* 97 Md. 654. In that case the accident occurred in daylight and contributory negligence was imputed to the plaintiff because by his own admission the hole into which the wheel of his wagon ran was visible at a distance of half a square, and he did not see it because he was talking to a companion and was not looking. It was stated in the opinion by JUDGE PEARCE that "greater watchfulness is required of the driver of a team upon a city street than of a pedestrian upon the sidewalk, and what would be negligence in law in the former case might not be in the latter." The cases from other jurisdictions to which our attention has been called upon the question of contributory negligence involved causes of injury which the evidence conclusively showed might have been avoided by the exercise of due care. In the present case such a condition of proof does not exist.

By the fourth prayer offered on behalf of the contractors the proposition was submitted, in substance, that if both the defendants and the plaintiff were negligent and the negligence of each contributed to the accident, then the verdict must be for the defendants, even though the jury should find the negligence of the defendants to have been grater than that of the plaintiff. It is not ncessary to discuss this prayer further than to say that we do not find its theory supported by any legally sufficient evidence of the plaintiff's negligence. There was evidence offered by the defendants

as to the location of street lamps in the parkway of the ave-
nue in which the accident occurred, and as to their being
lighted at the time, but there was nothing affirmative to
show that there was sufficient light at the place at which the
frame was located to reveal it to a person exercising ordinary
care. In order to grant this instruction it would be neces-
sary to hold that the jury might infer negligence on the
part of the plaintiff from the mere fact that she failed while
walking at night with a child in her arms to see a dark
obstruction nine inches high lying on the sidewalk at a place
where its presence was not to be suspected. A finding of
contributory negligence under such circumstances could only
be the result of conjecture. The rejection of the prayer was
proper.

The city and the contractors offered prayers for the with-
drawal of the case from the jury upon the theory that there
was no legally sufficient evidence of negligence on the part
of the respective defendants. These prayers were rejected
by the Court below. The testimony was in conflict as to
whether there was a light on the obstruction at any time
prior to the accident and also, as already stated, as to whether
the frame was negligently placed and kept on the sidewalk,
and the refusal of the proposed instructions was clearly cor-
rect. There were other prayers offered by the defendants
which the Court below declined to grant, but no reference
was made to them in the argument on behalf of the defend-
ants, and we will not discuss them separately, but will simply
state that they were all at variance with the principles we
have discussed and applied to the case and that we find no
error in their rejection.

The two prayers submitted by the plaintiff correctly pre-
sented the issues of fact to the jury and defined the measure
of damages, and the special exception to them on the ground
that they were not supported by legally sufficient evidence
of the delivery of the frame to the defendants prior to the
accident, or of the plaintiff's due care, or of the defendants'
negligence, was properly overruled.

In the first bill of exceptions the defendants noted their objection to the admission in evidence of an ordinance of the City of Baltimore, applicable by its terms to municipal agents and employees as well as to all other persons, providing that building material left in any of the streets, lanes or alleys of the city should, during the night, "be designated by displaying a lighted lamp or lantern at such part of the same as to be easily observed by persons passing along the streets." This evidence was competent not only as reflecting upon the duty of the defendants in the premises, but also as emphasizing the right of the plaintiff, with her presumptive knowledge of the ordinance, to assume that in the absence of such a signal of danger the street was safe for her passage. In the case of *Flynn* v. *Canton Company,* 40 Md. 312, cited in support of this exception, there was no question as to the admissibility of evidence, and the point of the decision was that the failure of an abutting owner to comply with an ordinance requiring, under a prescribed penalty, the removal of snow from the sidewalks in Baltimore City, did not make him liable to a person injured by a fall occasioned by an accumulation of snow and ice in front of the defendant's dwelling.

The second, fifth, sixth, ninth and tenth exceptions were not pressed. There is no reversible error in any of the rulings to which they relate.

In the third bill of exceptions the defendants complain of the admission of a statement by the plaintiff, in describing her injuries, to the effect that her hearing was affected by the injury she had sustained to the right side of her head when she fell over the frame. This was claimed to be objectionable on the ground that the declaration did not mention loss of hearing as one of the consequences of the accident.. It was urged that where a plaintiff proposes to claim for injury to one of the special senses the defendant should be given notice of such a claim in the declaration, as otherwise he may be subjected to surprise at the trial. In the present declaration it is averred that the plaintiff's right leg was severely and permanently injured; that her head was badly

brūised and her system generally shocked, and that she sustained other permanent injuries. The defendants were thus apprised that the plaintiff's claim was intended to cover not only the wounds specifically mentioned, but also other injurious effects of the fall, and in our opinion the impairment of her hearing as a consequence of the injury to her was competent to be proved as an element of damage.

The fourth exception is unimportant. A question propounded to the plaintiff on cross-examination was ruled improper, apparently because it assumed conduct on her part to which she had not testified; but it was at once repeated in another form and answered without objection.

It appears from the seventh bill of exception that the Court below refused to permit a witness to answer a question as to whether Broadway was a well-lighted block as compared with other parts of the city. There was no issue of negligence in relation to the ordinary lighting of the street, and there was full proof as to the location of the lamps in that vicinity and the fact that they were lighted at the time of the accident. The inquiry as to whether the block was well lighed as a matter of comparison was therefore irrelevant. The eighth exception presents the same question and the evidence to which it refers was properly excluded.

The eleventh, twelfth, thirteenth and fourteenth bills of exception refer to testimony admitted in rebuttal to the effect that on various nights between November 2nd, the date of the accident, and the latter part of the same month, there was no light on the frame. This was in contradiction of the testimony given by the contractors' material man, previously noted, that beginning with October 24th he had himself placed a lighted lamp on the obstruction every night, and had taken it away every morning, until the removal of the frame about the last week in November. It is objected that this evidence on both sides was irrelevant, except in so far as it related to the presence or absence of the light on the night of the accident, but that the testimony of the defendants' witness on the subject, having been admitted without objec-

tion, could not be made the occasion for the introduction of immaterial evidence in rebuttal by way of contradiction. This objection incorrectly assumes the irrelevancy of the evidence sought to be rebutted. As indicating care and diligence in the maintenance of the light, it was competent for the defendants to prove by the employee to whom they had committed the duty that he had given the matter his personal attention every night without intermission until the obstruction was removed. This testimony was pertinent to the issue of negligence, and the contradictory evidence offered in rebuttal was equally competent.

We find no reversible error in any of the rulings presented for review, and the judgment will be affirmed.

*Judgment affirmed, with costs.*