THE STATE OF MARYLAND, For the Use of Daisy
A. Biggs, Widow, et al.

*vs.*

THE MAYOR AND CITY COUNCIL OF BALTIMORE
CITY, A Municipal Corporation.

*Municipal corporations: highways and docks; duty as to—; neg-
ligence; damages; questions for the jury.*

It is the duty of a municipality to keep its public streets and
highways in a safe and proper condition for public travel, and
if the municipality fails in this duty and a person is injured
as a result thereof, without negligence on his part, the munici-
pality is responsible for the same in damages.          p. 690

Whether there was such negligence on the part of the munici-
pality is a question of fact for the jury, under proper instruc-
tions from the Court.                                   p. 690

In cases of suits for damages for injuries sustained through
the negligence of the defendant, testimony of those familiar with
the locality is admissible to describe it.              p. 692

Where evidence is conflicting the question is one for the jury.
p. 690

The weight and effect of testimony is for the consideration of
the jury.                                               p. 692

*Decided January 10th, 1917.*

Appeal from the Baltimore City Court.   (Duffy, J.)

The facts are stated in the opinion of the Court.

The cause was argued before Boyd, C. J., Briscoe,
Burke, Thomas, Pattison, Urner, Stockbridge and Con-
stable, JJ.

*Clifton S. Brown* (with whom was *Augustus J. Quinn* on the brief), for the appellant.

*Benjamin H. McKindless, Assistant City Solicitor,* (with whom was *S. S. Field, City Solicitor,* on the brief), for the appellee.

BRISCOE, J., delivered the opinion of the Court.

This action was brought for the use of the widow and the infant children of one Albert Biggs, deceased, against the defendant, the Mayor and City Council of Baltimore, to recover damages for his death, alleged to have been caused by the negligence of the defendant, in permitting one of its public streets or highways, called Bush street, at the point where it adjoins what is known, as the Bush Street Dock, to be and remain in an unsafe and dangerous condition for public travel.

The amended declaration, and the one upon which the case was tried avers, in substance, that it was the duty of the Mayor and City Council, its agents and servants, in the premises, so to protect this street at the point overlooking the dock, that the public should be safeguarded from accident while traveling along the street; but the Mayor and City Council of Baltimore City, its agents and servants, carelessly and negligently failed to perform its duty in the premises, and left the street unsafely protected, in consequence whereof Albert Biggs on the night of the 27th day of February, 1915, while lawfully operating and driving an automobile on Bush street, ran into the dock, and was then and there thrown into the water; and that Albert Biggs used due care. That by reason of being thrown into the water of the dock, he became sick in body and mind, and from the sickness did, on the 11th day of March, 1915, die; that the running of the automobile and the throwing of Biggs into the water of the Bush street dock, and his sickness and his death were due to the unsafe and dangerous condition of Bush street at the point where it overlooks Bush street dock; and the unsafe and dangerous condition of Bush street, was

due to the negligence and carelessness of the defendant, its agents and servants; and that Albert Biggs at the time of the happening of the events hereinbefore mentioned, in no wise contributed to the accident.

At the conclusion of the testimony on the part of the plaintiff, the Court below granted the defendant's second and fourth prayers, withdrawing the case from the jury, first, upon the ground that there was no evidence legally sufficient to prove any negligence upon the part of the City, and secondly, that it appears from the undisputed evidence, that the deceased did not exercise reasonable care to avoid the accident, but by his own negligence contributed directly to the injuries which resulted in his death, and that under the pleadings the verdict of the jury must be for the defendant. The action and ruling of the Court in granting these prayers, directing a verdict for the defendant constitutes the plaintiff's sixteenth exception, and as this exception presents the principal propositions of law, in the case, it will be passed upon by us, before considering the other questions raised by the exceptions to the rulings of the Court upon evidence.

Was the Court right, in holding as a matter of law, under the evidence set out in the record and in so instructing the jury, first, that there was no evidence legally sufficient to prove any negligence on the part of the defendant, and secondly, in ruling that under the undisputed evidence, the deceased by his own negligence contributed directly to the injuries which resulted in his death?

The solution of these questions involves and requires an examination and statement of the material facts, as disclosed by the record.

The rules of law bearing upon negligence and contributory negligence have so often and recently been announced by this Court, as to admit of but little discussion. A reference to a few of the cases, should be sufficient to establish the general rule, on which similar questions must be determined. *McCarthy* v. *Clark*, 115 Md. 454; *Annapolis* v. *Stallings*, 125 Md. 343; *Burke* v. *Baltimore City*, 127 Md. 560.

The material facts of the case briefly stated, will be found, to be these: The deceased at the time of the accident, on the 27th of February, 1915, was employed by Charles B. Jester, in the work of house painting and when not engaged in this work, acted as chauffeur in running an automobile belonging to his employer. On the afternoon of the accident he was directed to take the machine to the garage to be overhauled, and after it had been repaired, it was taken from the shop by him and the machinist, to be tested on the streets. The witness Langhart testified, that they left the garage at 5:30 P. M. and proceeded north on Spring street to Hoffman street and west on Hoffman to Harford avenue, thence over certain other streets to Pratt street, and west on Pratt street to Munroe street, that they stopped at the corner of these two streets and that Biggs left the witness at this point about 8 P. M. and drove the car south on Monroe street.

The witness Matthews testified, that on the night of the accident, between 8 and 9 o'clock a car was stopped at Ridgely street and an inquiry made by some one as to the direction to the Annapolis road. He told him to go down Bush street and make a turn to the right on the Annapolis road, that Ridgely street was about one square from the Annapolis road. "I told him to go to the next square and turn to the right" and that the machine went down Bush street and when the witness looked again he saw the back part of the machine go over the wall, into the water of the dock. That there was an electric light located at the northwest corner of Bush street and the Annapolis road, and "I told him where the light was lighting and going out to turn to his right."

The evidence further shows, that Bush street at the place of the accident extends southeasterly to the northwest side of Russell street which is commonly called the Annapolis road. This road extends southwesterly across the lower end of Bush street. A large sewer is located beneath the bed of Bush street, and across Russell street, and empties into what is called the Bush street dock.

At the foot of Bush street and on the sewer, there was a stone wall, the coping of which was about six or seven inches above the surface of the adjoining ground and adjacent to and along side of the Annapolis road, and there was testimony that this coping, to one walking down Bush street at night could not be seen "until you got right on top of it. While there were two arc lights attached to poles, one across the road at Bush street and the Annapolis road, and the other about 150 or 175 feet distant to the west from the first light, there is a conflict in the testimony, as to whether the arc lights, there located, furnished sufficient light and warning to enable travelers or strangers passing at night, along Bush street, to see that this street ended, at the Annapolis road and Bush street dock. There was no light upon the stone wall, and no guard around or near the coping on the wall, and this coping was only about six or seven inches above the surface of the ground.

These facts, it will be seen, are material and as the evidence is conflicting in regard to them, they present questions proper for a jury to determine.

There was no question raised as to the public character of these streets, but it was admitted that Bush street and Russell street are public streets.

There was other testimony, but as we think the Court below upon the whole testimony committed an error in withdrawing the case from the consideration of the jury on the prayers of the defendant it need not be set out by us.

The duty of a municipality to keep its public streets and highways in a safe and proper condition for public travel is well settled by numerous decisions of this Court, and if the city negligently fails so to do, and persons acting without negligence are injured, the city is liable in damages. *Baltimore City* v. *Beck,* 96 Md. 190; *Baltimore City* v. *Walker,* 98 Md. 643; *Annapolis* v. *Stallings,* 125 Md. 345; *Burke* v. *Baltimore,* 127 Md. 562.

In *Mayor and City Council* v. *O'Donnell,* 53 Md. 110, this Court said: " 'That it was the duty of the defendant to

take proper precaution, by proper guards, signals, lights or other warnings, to warn persons of the impassable condition of the street, so as to prevent injuries to persons passing along said street, and if the jury further find that the defendant, and those employed by it in repairing and recurbing said street, did not use ordinary care in providing such precautions, and that the plaintiff in consequence of such neglect to provide such precautions was thrown from his hack while driving with ordinary care along said street, then the plaintiff is entitled to recover.' "

In *Mayor and City Council of Baltimore* v. *Maryland,* 166 Fed. 641, the Court said: "Undoubtedly, a municipality is not required ordinarily to erect barriers, railings or other construction to prevent persons traveling upon a highway from straying therefrom; but it does not follow that the obligation does not exist where the point is dangerous, either naturally or because of the work being done in and about the highway at the particular time. Whether the excavation in this case was dangerous, or the railing thereto, or the warning given was sufficient to protect persons from or warn them of such danger, were questions of fact, all to be determined by the jury upon consideration of the whole evidence." *Burton* v. *Kansas City,* 181 Mo. App. 427; *Burke* v. *District of Columbia,* 42 App. D. C. 438; *Corcoran* v. *City of New York,* 188 N. Y. 131; *Wheat* v. *St. Louis,* 179 Mo. 572.

There was also error in the ruling of the Court upon the fourth prayer. There was no such testimony as to warrant the Court to rule, that the conduct of the deceased amounted in law, to contributory negligence. This question, under the conflicting evidence, was one of fact for the jury. *B. & O. R. R.* v. *State,* 72 Md. 40; *Baker* v. *Md. Coal Co.,* 84 Md. 27; *McCarthy* v. *Clark,* 115 Md. 464; *Burditt* v. *Winchester,* 205 Mass. 493.

Coming now to a consideration of the fifteen bills of exception reserved in the course of the trial to the rulings of the Court upon the admission of evidence, we find no reversible

error in the first, seventh, eighth, ninth, tenth, eleventh, twelfth, fourteenth and fifteenth exceptions. There was error in the rulings on the second, third, fourth, fifth and sixth exceptions.

The witness Galloway who was present on the night of the accident and assisted in removing the deceased from the water, and bringing him to the shore and who had an opportunity of observing the conditions and was familiar with the place of the accident, was asked the following question: "Will you state to the Court and jury how the dock appeared in relation to Bush street on this particular night?" An objection to this question was sustained, as set out in the second exception.

There was serious error as to the ruling on this exception. The witness had been familiar with the place and surroundings for eighteen years and was clearly competent to speak of the place of the accident.

In *United Railways* v. *Ward,* 113 Md. 649, this Court said: "It is the uniform practice to allow those who witness an accident of the character of the one we are considering, to testify to the speed of the train or car, and to permit those who are familiar with it to describe the place of the accident." *Wigmore on Evidence,* secs. 460, 650.

There was also error as to the rulings on the third, fourth, fifth and sixth exceptions for the reasons stated in discussing the second exception.

The medical testimony tended to show that the proximate cause of Biggs' death was due to the shock and exposure resulting from the accident, and as the judgment must be reversed for the errors indicated, and a new trial awarded, we refrain from intimating an opinion as to the weight and effect of the testimony, set out in the record, as these were questions for the consideration of the jury upon proper instructions from the Court.

For the reasons stated, the judgment will be reversed and a new trial awarded.

*Judgment reversed and new trial awarded,*
*with costs.*